BEACH, APPELLEE, *v.* BEACH, JR., APPELLANT.

(No. 2319—Decided March 24, 1955.)

*Mr. Robert W. Schroader* and *Mr. James C. Baggott,* for appellee.

*Messrs. Canny, Stewart & Cromer, Messrs. Landis, Ferguson, Bieser & Greer* and *Mr. Charles S. Bridge,* for appellant.

Wiseman, J. This cause is submitted on motion of plaintiff, appellee herein, the wife, for an order requiring the defendant, appellant herein, the husband, to pay the plaintiff a reasonable amount for expenses of suit.

This is an appeal on questions of law from an order of the Common Pleas Court, Division of Domestic Relations, of Montgomery County, in an action for divorce, directing the defendant to pay as temporary alimony the sum of $400 toward plaintiff's attorney fees. The failure to pay resulted in a contempt charge on which the defendant was held in contempt and ordered to pay a fine of $200 and sentenced to be imprisoned 10 days. From that order this appeal is taken. The divorce case is still pending in the lower court.

After the appeal was lodged in this court, the plaintiff filed her motion for an order requiring the defendant to pay a reasonable amount for expenses of suit. This motion could apply only to expenses incident to making a defense to this appeal. In the consideration of this motion we are not concerned with the merits of the appeal.

Section 3105.14, Revised Code (formerly Section 8003-15, General Code, which was analogous to Section 11994, General Code) provides as follows:

"On notice to the opposite party of the time and place of the application, the Court of Common Pleas, or a judge thereof in vacation, may grant alimony to either of the parties for his sustenance and expenses during the suit and allowances for the support of minor children of the marriage or by adoption during the pendency of the action for divorce, or alimony alone. *When an appeal is taken by either party, the Court of Appeals, or a judge thereof in vacation, may grant like alimony and support during the pendency of the appeal, upon like notice.*" (Emphasis added.)

At once the question is presented as to whether this section has application to this appeal, which is from an order made in a contempt proceeding for failure to pay temporary alimony. Who is the real party in interest, the plaintiff, the wife, or the court? The contempt proceedings were initiated under the provisions of Section 2705.02, Revised Code (formerly Section 12137, General Code), for a disobedience of a lawful order of

the court, and sentence was pronounced under Section 2705.05, Revised Code (formerly Sections 12141 and 12142, General Code).

This appeal is captioned, *Virginia S. Beach, Plaintiff-appellee,* v. *John M. Beach, Jr., Defendant-appellant.* Contempts of court are classed as being either civil or criminal. While it is possible to prosecute a criminal contempt in the name of the state, it is well established that a civil contempt need not be brought in the name of the state, but in the name of the party in the cause out of which it arose. *In re Hannberger,* 19 C. C., 651, 10 C. D., 561; *Galley* v. *Galley,* 13 C. C. (N. S.), 522, 23 C. D., 161; *Hayes* v. *Hayes,* 11 Ohio App., 10, 15; 11 Ohio Jurisprudence (2d), 148, Section 65; 12 American Jurisprudence, 433, Section 66; 17 Corpus Juris Secundum, 74, Section 62, subsection *b.*

Civil contempt is defined as that which exists in failing to do something ordered to be done by the court in a civil action for the benefit of the opposing party therein. 11 Ohio Jurisprudence (2d), 94, Section 6; 12 American Jurisprudence, 392, Section 6; 17 Corpus Juris Secundum, 8, Section 6. In 17 Corpus Juris Secundum, 7, Section 5, the distinction between criminal and civil contempt is stated as follows:

"The line of demarcation between acts constituting criminal and those constituting civil contempts is very indistinct. The confusion in attempts to classify civil and criminal contempts is due to the fact that there are contempts in which both elements appear. In general, contempts of court for which punishment is inflicted for the primary purpose of vindicating public authority are denominated criminal, while those in which the enforcement of civil rights and remedies is the ultimate object of the punishment are denominated civil contempts; whether or not a fine or imprisonment is imposed is not a distinguishing test."

Supporting the same proposition, see *State, ex rel. Maple,* v. *Hamilton,* 19 C. C. (N. S.), 229, 235, 27 C. D., 147, affirmed without opinion, *State, ex rel. Voorhees,* v. *Cassingham,* 88 Ohio St., 603, 106 N. E., 1080; *State, ex rel. Merrill,* v. *Moore,* 83 Ohio App., 525, 82 N. E. (2d), 323. Proceedings for contempt to enforce a civil remedy and to protect the rights of par-

ties litigant should be instituted by the aggrieved parties. *State, ex rel. Maple,* v. *Hamilton, supra,* at page 235; *Hayes* v. *Hayes, supra,* at page 14; *In re Nevitt,* 117 F., 448, 458, cited in *Hayes* v. *Hayes.* In the *Nevitt case* Judge Sanborn said, at page 459:

"The party in whose favor that judgment was rendered is the real party in interest in the proceedings."

See, also, 12 American Jurisprudence, 392, Section 6; 17 Corpus Juris Secundum, 79, Section 63. Nonpayment of alimony falls within the provisions of Section 2705.02, Revised Code (formerly Section 12137, General Code), and is classed as a civil contempt. 9 Ohio Jurisprudence, 98, Section 53; 12 American Jurisprudence, 392, Section 6. The proceedings in contempt were properly instituted and correctly captioned. The wife for whose benefit the order was made was the aggrieved party and is the real party in interest. Therefore, we conclude that counsel for the appellee are acting as counsel for the wife and not the trial judge.

An order finding defendant guilty of contempt of court for failure to pay temporary alimony is reviewable on questions of law. *Brady* v. *Brady,* 47 Ohio Law Abs., 73, 69 N. E. (2d), 447; 2 Ohio Jurisprudence (2d), 663, at 665, Section 80.

We approach this matter from the viewpoint that the appeal pending, being from an order holding the appellant in contempt for failure to obey an order to pay temporary alimony, grows out of the principal cause of action for divorce and is, therefore, purely statutory in nature. The appeal here pending and the motion interposed in this court for allowance of expense money are incidental to the statutory action and fall within the purview of Section 3105.14, Revised Code, above quoted. See *West* v. *West,* 100 Ohio St., 33, 124 N. E., 888.

The word "appeal" as used in Section 11994, General Code (now Section 3105.14, Revised Code), has been construed to mean "appeal *de novo,*" as this was the meaning of the term when the statute was passed, which antedated the 1912 Ohio Constitution, which rendered nugatory that provision of the statute. *Rockhold* v. *Rockhold,* 11 Ohio Law Abs., 399 (1932); *Riebel* v. *Riebel,* 15 Ohio Law Abs., 254 (Court of Appeals for Franklin County, 1933); *Dann* v. *Dann,* 71 Ohio App., 110, 48

N. E. (2d), 140 (1942); *Davis* v. *Davis,* 41 Ohio Law Abs., 189, 57 N. E. (2d), 701 (Court of Appeals for Franklin County, 1943). See, also, *Jelm* v. *Jelm,* 155 Ohio St., 226, 237, 98 N. E. (2d), 401, 22 A. L. R. (2d), 1300. In the *Davis case,* this court followed the *Rockhold case* and its former ruling in the *Riebel case.* The headnote in the *Davis case* is as follows:

"Section 11994, General Code, authorizing temporary alimony and support during the pendency of an appeal is not applicable to an error proceeding since the Constitution of 1912, and the new procedural act does not change the rule and the Appellate Court does not have jurisdiction to grant temporary alimony in an error proceeding."

Two cases are cited which take a contrary view. In the case of *Calhoun* v. *Calhoun,* 29 Ohio Law Abs., 670, decided by this Court of Appeals in 1939, the court held that the Court of Appeals may allow additional expense money for preparation of a transcript of the testimony and for attorney fees for the prosecution and perfecting of an appeal under the provisions of Section 11994, General Code. No authorities are cited in the opinion, and the court does not discuss the question raised in the *Rockhold* and *Riebel cases.* In 1949, the Court of Appeals for Mahoning County, in the case of *Bryant* v. *Bryant,* 56 Ohio Law Abs., 107, 91 N. E. (2d), 275, made a similar ruling, and cited the *Calhoun case* without comment. This Court of Appeals, which decided the *Davis case* in 1943, although not mentioning its former ruling in the *Calhoun case,* impliedly rejected this proposition of law and reaffirmed its former ruling in the *Riebel case.* In the absence of any legislative or constitutional change which may necessitate a different ruling, the principle of law in the *Davis case* controls.

In 1951, the Legislature recodified the laws on marriage and divorce (Amended Senate Bill No. 65, 124 Ohio Laws, 178), and Section 11994, General Code, being amended, was renumbered Section 8003-15, General Code. The amendment did not relate to the authority of the appellate court. However, it may be urged with much force that in passing the section as amended, the Legislature intended the word "appeal" to be given the meaning used in the Appellate Procedure Act. In 37 Ohio Jurisprudence, 594, Section 331, the text is as follows:

"The General Assembly, in enacting a statute, is assumed, or presumed, to have legislated with full knowledge and in the light of all statutory provisions concerning the subject-matter of the act, because the legislative mind, in the enactment of a statute, is directed to what has been enacted and exists as a part of the statutory law of the state on the same subject, or subjects related to it. It is therefore a fundamental rule of statutory construction that sections and acts *in pari materia* should be construed together as if they were a single statute."

The test to be applied in determining whether sections are *in pari materia* is stated in 37 Ohio Jurisprudence, 599, Section 332, as follows:

"Statutes or sections which expressly refer to each other or which relate to the same person or thing or to the same class of persons or things or to the same subject or object may be regarded as *in pari materia*. Sections have been considered *in pari materia* which are parts of the same law or act or which were formerly parts of one section or of the same original statute. Although sections of the same chapter of the Code have been regarded as *in pari materia*, the fact that they are found in different chapters of the Code does not prevent them from being *in pari materia*. They may be *in pari materia* even though they contain no references to each other, whether enacted concurrently, or at the same session of the Legislature, or at different times."

We would have no difficulty in holding that former Section 8003-15, General Code (now Section 3105.14, Revised Code), is *in pari materia* with Section 12223-1, General Code, and the related sections of the Appellate Procedure Act, which define "appeal" to mean all proceedings presented on review, as well as a retrial. This matter being presented on appeal on questions of law, the word "appeal" as used in Section 3105.14, Revised Code, would apply to this proceeding. This was the ruling of this court in *Sciacca* v. *Sciacca*, 69 Ohio Law Abs., 513, where the question of jurisdiction, which we later discuss, was not raised.

The recodification of the General Code, whereby Section 8003-15, General Code, became Section 3105.14, Revised Code, has no bearing on the question. Section 3105.14, Revised Code,

is substantially similar to Section 8003-15, General Code. Furthermore, Section 1.24, Revised Code, known as the saving clause, provides that "it is the intent of the General Assembly not to change the law as heretofore expressed by the section or sections of the General Code in effect on the date of enactment of this act." Consequently the same meaning given to the word "appeal" in Section 8003-15, General Code, must be given to the word "appeal" as used in Section 3105.14, Revised Code.

Assuming that the Legislature, in enacting Section 8003-15, General Code, intended that the word "appeal" as used in that section should apply to appeals on questions of law, which was taken in this case, may this court entertain jurisdiction to hear and determine the matter raised by the motion of appellee? We do not think so. The jurisdiction of the Court of Appeals is conferred by the Constitution (Section 6, Article IV) and may not be enlarged by the Legislature. *Green* v. *Acacia Mutual Life Ins. Co.,* 156 Ohio St., 1, 100 N. E. (2d), 211; *Hoffman* v. *Knollman,* 135 Ohio St., 170, 20 N. E. (2d), 221; *State* v. *Theisen,* 91 Ohio App., 489, 490, 108 N. E. (2d), 854. The Supreme Court has decided that until there is legislative action, the appellate jurisdiction of the Courts of Appeals remains as it was prior to the amendment of Section 6, Article IV of the Ohio Constitution, effective January 1, 1945. *Youngstown Municipal Ry. Co.* v. *City of Youngstown,* 147 Ohio St., 221, 70 N. E. (2d), 649; *State* v. *Edwards,* 157 Ohio St., 175, 105 N. E. (2d), 259. Prior to the amendment, Section 6, Article IV of the Ohio Constitution, so far as it is pertinent here, provided:

"The Courts of Appeals shall have original jurisdiction in quo warranto, mandamus, habeas corpus, prohibition and procedendo, and appellate jurisdiction in the trial of chancery cases, and, to review, affirm, modify, or reverse the judgments of the Courts of Common Pleas, superior courts and other courts of record within the district as may be provided by law * * *."

After the amendment this constitutional provision read:

"The Courts of Appeals shall have original jurisdiction in quo warranto, mandamus, habeas corpus, prohibition and procedendo, and such jurisdiction as may be provided by law to re-

view, affirm, modify, set aside, or reverse judgments or final orders of boards, commissions, officers, or tribunals, and of courts of record inferior to the court of appeals within the district * * *.''

Prior to the amendment, the Constitution conferred on the Courts of Appeals ''appellate jurisdiction in the trial of chancery cases.'' This jurisdiction was on appeal from an order made in a chancery case; it did not confer jurisdiction in the Courts of Appeals to try *de novo* matters which are classified as purely statutory proceedings. In *LeMaistre, Admr.,* v. *Clark,* 142 Ohio St., 1, 50 N. E. (2d), 331, it was held that ''such appellate jurisdiction does not authorize such courts to conduct a trial on issues of fact unless such a trial has been had in the court of first instance.'' The matter presented to this court raises an issue of fact which was not presented to the court below. In deciding the question presented, this court would be required to exercise *original* rather than *appellate* jurisdiction. This we may not do. *LeMaistre, Admr.,* v. *Clark, supra,* page 4.

The appeal before us is on questions of law. We have jurisdiction on review only. The motion raises an issue of fact on which this court would be required to determine the facts on an appeal on questions of law. This court has no such power.

But it may be urged that because Section 8003-15, General Code, was passed since the constitutional amendment, the Legislature now has conferred such authority on the court as is contemplated by the ruling in the *Youngstown* and *Green cases.* This point raises a question as to the limits of legislative authority.

The pertinent part of the Constitution as amended provides that the Courts of Appeals shall have original jurisdiction in regard to the five writs, ''and such jurisdiction as may be provided by law,'' which provision is limited by the words which immediately follow, to wit: ''to review, affirm, modify, set aside, or reverse judgments,'' etc. We find no authority in this constitutional grant of legislative power to enact a statute conferring on the Courts of Appeals original jurisdiction to conduct a hearing and determine questions of fact in an ancillary matter arising in connection with an appeal on questions of law. To do so would be to enlarge the jurisdiction of the Courts of

Appeals. The Legislature has no such power. *Green* v. *Acacia Mutual Life Ins. Co., supra.* If the Legislature intended to confer such power in the enactment of Section 8003-15, General Code, that part of the section would be unconstitutional and void.

But it is contended that the Courts of Appeals have the inherent power to grant the relief asked. There is a wide diversity of opinion on this subject. In many jurisdictions the reviewing courts, independently of any statutory authority, have allowed temporary alimony for support and counsel fees for prosecution or defense of the appeal. It is held that such jurisdiction is an incident of its appellate jurisdiction; that it is not the exercise of an original jurisdiction, but is essential to the proper administration of justice in the exercise of appellate jurisdiction. See, 17 American Jurisprudence, 421, Section 517; 18 A. L. R., 1505, subdivision V*a*; 136 A. L. R., 502; 27 Corpus Juris Secundum, 887, Section 203 (2); and cases cited thereunder in support of both views. The authorities which hold that the court does not possess the inherent power to make an order in such matters ground their conclusion on the fact that only appellate jurisdiction is conferred; that the jurisdiction which is sought to invoke is original; that the court may only review the orders made below, and can not make a finding of facts; and that the allowance to be made, if any, lies within the jurisdiction of the trial court. Some of the courts point out that they may not exercise both original and appellate jurisdiction over the same subject matter in the same suit. In Ohio we find no reported opinion holding that the reviewing court has such inherent power.

Under Section 3105.14, Revised Code, expense money is classified as temporary alimony. We cannot distinguish between temporary alimony for support and expense money for counsel fees, as was done in some of the cases cited in A. L. R.

The rationale of the *Davis case, supra,* and other cases in accord therewith, which have heretofore been cited, is in harmony with the latter view, and rules out the "inherent power" theory. We subscribe to the theory that such matters are purely statutory, and unless jurisdiction is conferred by statute within the constitutional limits, the Courts of Appeals in Ohio

are without jurisdiction in such matters. Clearly, the Courts of Appeals of this state should not attempt to exercise jurisdiction on the theory of inherent power in a matter on which the Constitution of the state does not confer on the Legislature the power to legislate.

*Motion denied.*

MILLER, P. J., concurs.
HORNBECK, J., concurs in the judgment.

(Decided April 21, 1955.)

ON THE MERITS.

WISEMAN, J. This is an appeal on questions of law from an order of the Common Pleas Court, Division of Domestic Relations, of Montgomery County, in an action for divorce, in which the court found the defendant guilty of contempt of court, and pronounced sentence for failure to comply with a former order of the court.

An order finding defendant guilty of contempt for failure to comply with the former order to pay $400 to counsel for plaintiff and sentencing defendant to pay a fine of $200 and be confined in jail for 10 days is a final order and reviewable. See, *Brady* v. *Brady,* 47 Ohio Law Abs., 73, 67 N. E. (2d), 447.

Section 3105.14, Revised Code, in part, provides: "On notice to the opposite party of the time and place of the application, the Court of Common Pleas, or a judge thereof in vacation, may grant alimony to either of the parties for his sustenance and expenses during the suit."

The pertinent part of this section authorizes the court to: "Grant alimony to either of the parties for * * * expenses during the suit." The term "expenses" properly includes attorney fees. *Stuart* v. *Stuart,* 144 Ohio St., 289, 58 N. E. (2d), 656; *Keath* v. *Keath,* 78 Ohio App., 517, 71 N. E. (2d), 520.

The record in this court is a transcript of a part of the docket and journal entries and a bill of exceptions. We do not have before us the petition of plaintiff or the answer of the defendant.

The record shows that on November 24, 1954, plaintiff filed a motion, which is not in the record, requesting an order for partial payment of counsel fees. On November 26, 1954, the court made an order, which is in the record, the pertinent part of which is as follows:

"The court orders the defendant, John M. Beach, Jr., to pay the sum of Four Hundred ($400) Dollars as and for attorney fees upon account to counsel for the plaintiff.

"It is further ordered that the same be paid at the office of James C. Baggott * * *."

This amount was not paid. On December 13, 1954, James C. Baggott, counsel for plaintiff, filed a motion for citation against the defendant to show cause why he should not be punished for contempt. This motion recited the former order and the nonpayment. A citation was issued on which the court took evidence. The pertinent part of the finding and order from which the appeal was taken is as follows:

"This day this cause came on to be heard upon a citation for contempt of court made and issued December 13, 1954, to the defendant John M. Beach, Jr., to show cause why he should not be punished for contempt of court for his failure to abide the order of the court entered November 26, 1954, to pay the sum of Four Hundred ($400) Dollars on account for plaintiff's attorney fees. Upon hearing had and testimony taken by counsel for the parties hereto and by the court, it is the finding of the court that said defendant, John M. Beach, Jr., at the time of making the order and at all times since then has been financially able to comply with the order of the court but has willfully and without legal excuse failed and refused to abide by said order."

The contention of the appellant that the order ran in favor of the attorneys for the plaintiff and not to the plaintiff herself, raises an interesting question under Section 3105.14, Revised Code, heretofore quoted. As the record comes to us, there is nothing in the motions or orders of the court indicating that the allowance was made to the plaintiff, or that it was allowed as temporary alimony. The money was ordered to be paid directly to counsel. In the absence of a showing that the order was made in favor of the plaintiff and as temporary alimony under

Section 3105.14, Revised Code, the order made was without authority and invalid.

This court, in *Riebel* v. *Riebel,* 15 Ohio Law Abs., 233, held in the sixth paragraph of the headnotes as follows: ''It is irregular for the court in a divorce action to make an order to pay counsel fees of the wife direct to counsel.'' In *Parker* v. *Parker,* 28 Ohio Law Abs., 49, 56 N. E. (2d), 527, this court again, on a similar record, on page 52, said:

''The court can not award a sum to counsel direct to the exclusion of the litigant but of course may take into consideration counsel's fees in making the award for expenses during the suit, and we are of the opinion that the amount so awarded to defendant's counsel is without warrant and that the final entry should be so modified.''

In *Keath* v. *Keath, supra,* a similar question was presented to the Court of Appeals for Summit County. The court, in the second paragraph of the syllabus, said: ''The term 'expenses' includes attorney fees, and an award of expenses for such fees must be made to a spouse as alimony and not directly to the attorney.'' In that case, other questions were involved, but the court very definitely approved the above principle. See, also, *Black* v. *Stewart,* 28 C. C. (N. S.), 433, 30 C. D., 277. In 14 Ohio Jurisprudence, 456, Section 64, the author states that ''although the court may consider attorney fees in making an allowance pendente lite, such allowance must be made to the party, and cannot be made directly to the attorney.'' We consider the above to be the true rule.

The order of November 26, 1954, was invalid. It follows that a contempt charge cannot be predicated thereon. Prejudicial error resulted in finding the defendant guilty of contempt in failing to comply with such invalid order.

The finding of the court that the defendant was financially able to comply with the order was based on the evidence that the defendant possessed a National Service Life Insurance policy, issued by the United States government, the cash surrender value of which was $3,200. It will be observed that the order of the court did not require the defendant to surrender the policy. The policy of insurance was not mentioned in the order. However, it appears to be conceded that this was the only prop-

erty or assets possessed by the defendant from which he would be able to secure the money to pay counsel as ordered. Whether the court could legally require the defendant to surrender the National Service Life Insurance policy for the purpose of securing cash money out of which to pay counsel fees under the order need not be, and is not here, determined.

*Judgment reversed and cause remanded.*

MILLER, P. J., and HORNBECK, J., concur.