SANCHO, n.k.a. MUNK, Appellee,

v.

SANCHO, Appellant.

[Cite as *Sancho v. Sancho* (1996), 114 Ohio App.3d 636.]

Court of Appeals of Ohio,
Third District, Union County.

No. 14–96–22.

Decided Oct. 17, 1996.

---

638

*Cannizzaro, Frasser & Bridges* and *Donald R. Jillisky,* for appellant.

*Liggett–Pelanda Co., L.P.A.,* and *Kevin L. Pelanda,* for appellee.

HADLEY, Presiding Judge.

Defendant-appellant, Louis O. Sancho, appeals from the judgment entry of the Union County Common Pleas Court finding (1) appellant in contempt of court for failing to comply with the court's order to pay one-half of the extraordinary medical expenses for orthodontia and oral surgery for two of his four minor children; (2) that appellant had to pay the attorney fees of plaintiff-appellee, Merry Sancho (n.k.a. Merry Munk), in order to purge himself of contempt; and (3) that there was a change in circumstances justifying an increase in appellant's child support obligation.

Appellant and appellee divorced on December 28, 1993. They have four minor children that were born of the marriage. Pursuant to the divorce decree Merry retained custody of all four children, and Louis was ordered to pay $44 per week per child plus poundage in child support.[1] With poundage Mr. Sancho's obligation was $191.76 per week. The divorce decree ordered that Louis provide the major medical health insurance coverage for the children through his employer. Neither parent was permitted to subject the children to any elective medical treatments, except in the event of an emergency, without first consulting and obtaining the agreement of the other party.

In a separate order, not attached to the divorce decree as an exhibit or otherwise, but filed on the same day, appellant and appellee were each ordered to pay one-half of all the children's uninsured medical expenses, including orthodontia and oral surgery.

In 1995, two of Sancho children required orthodontia and oral surgery. Louis signed a contract with the medical providers agreeing to pay one-half of the uninsured expenses which were anticipated to be in excess of $7,800, but he admittedly never had any intention of honoring the contract. After consulting with a bankruptcy attorney, Mr. Sancho was under the impression that the medical expenses would be dischargeable in bankruptcy. Mr. Sancho filed for bankruptcy, but soon learned that the medical expenses he had agreed to pay for were not dischargeable because of the court order requiring him to pay one-half of the children's uninsured medical expenses. Mr. Sancho alleges that he never

---

1. Child support was determined pursuant to the Ohio Child Support Guidelines. The court found that the support allocation for each child was $57.56 per week for a total weekly support obligation of $230.22. Louis's annual earnings used in the calculations were $44,965, and Merry's annual earnings were $18,000. Mr. Sancho's support obligation was abated and prorated over the entire year to account for the six-week summer visitation he had with the children.

received a copy of and did not know that the health insurance coverage order existed at the time he signed the contract with the medical providers. After learning that the expenses were not dischargeable, he made payment arrangements with the medical providers.

On February 20, 1996, Merry filed a motion for modification of child support and visitation, citing a change in circumstances. She alleged that the change in circumstances was that she had remarried, had a child with her new husband, and quit her job to raise the child. As a result of reactivating the file with the Union County Common Pleas Court, the clerk of courts filed a motion to intervene on the ground that the court had an interest in the case because both parties owed court costs remaining from the divorce proceedings. The clerk filed a motion to show cause why both parties should not be held in contempt for failure to pay the court costs due.

On March 22, 1996, a contempt summons was issued against Mr. Sancho pursuant to R.C. 2705.031, setting a hearing date for the contempt charge and all other matters for May 1, 1996. On April 3, 1996, the clerk of courts filed a motion to dismiss the collection of costs against Mr. Sancho due to his pending bankruptcy action.[2]

On April 4, 1996, Merry filed a motion to amend her motion for modification of support and visitation requesting that she be permitted to add a show cause action against Louis as to why he should not be held in contempt of court for failing to abide by the court's order regarding the payment of uninsured medical expenses. The court never issued an order permitting Merry to amend her original motion to add the contempt charge. Louis was served with a copy of the motion requesting that Merry be permitted to amend and include the contempt charge. Since the court never ruled on the proposed amendment, a contempt summons was never issued to Louis.[3] The matter set for May 1, 1996, on all pending motions was later rescheduled for and held on May, 7, 1996.

As a result of the hearing on May, 7, 1996, the Union County Common Pleas Court found Louis Sancho guilty of contempt of court for not paying one-half of the children's uninsured medical expenses and "try[ing] to avoid the order of the Court by going through Bankruptcy Court." He was sentenced to thirty days in jail, but was permitted to purge himself of the contempt finding by, among other things, paying Merry's attorney fees for the contempt charge within the next

---

2. The record indicates that the clerk also filed a motion to withdraw in the action on April 24, 1996, because the parties paid the fees owed. The court granted the motion on April 25, 1996.

3. Mr. Sancho was still subject to the summons from the "show cause action" filed by the clerk of courts.

thirty days. The court also found that a change in circumstances existed, and modified the child support obligation of Mr. Sancho by increasing the amount due to $47.89 per week per child plus poundage, or $195.38 total per week.

It is from this judgment that Louis Sancho now appeals and asserts five assignments error. To address appellant's assignments of error in a logical fashion, we will first address assignment of error number two.

Assignment of Error No. 2

"The trial court erred as a matter of law by failing to give the defendant [Louis Sancho] the statutorily required notice mandated by R.C. 2705.031, thereby denying the appellant due process of law under the Ohio and United States Constitutions."

Mr. Sancho alleges that the trial court denied him his procedural due process rights under the United States Constitution and the Ohio Constitution by failing to give him the statutorily mandated notice of the charges pending against him with regard to the contempt of court charge. Merry had filed a motion to amend an earlier filed motion to include a cause against Louis to show cause why he had not paid one-half of his children's uninsured medical expenses as ordered by the court. Although Louis received a copy of the motion and the brief filed *instanter*, the court never rendered a decision on whether to grant Merry's motion to amend.

Pursuant to R.C. 2705.031, an action for contempt of court is proper by "any party who has a legal claim to any support ordered for a child * * * for failure to pay the support." R.C. 2705.031(B)(1). The tenets of procedural due process mandate that the alleged contemnor receive notice of the charges through a court.[4]

It is uncontested that Louis Sancho never received a summons on the contempt charge filed by Merry regarding the uninsured medical expenses due. However, procedural due process rights may be waived. *D.H. Overmyer Co., Inc. of Ohio v. Frick Co.* (1971), 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124. Mr. Sancho, by failing to preserve the issue for appeal, waived his procedural due process right.

Appellee's counsel noted at the outset of the May 7, 1996 hearing that the judge had not ruled on whether the contempt charge should be addressed. Mr. Sancho's counsel did not object or in any way express his reservation about proceeding on the contempt charge. If Mr. Sancho's counsel had an objection as

---

4. R.C. 2705.031 states:

"(C) In any contempt action initiated pursuant to division (B) of this section, the accused shall appear upon the *summons and order to appear that is issued by the court.*"

to the lack of notice, he could have noted his objection for the record and/or asked for a continuance. Rather, counsel proceeded with the hearing and called his own witnesses to defend the contempt charge. Thus, appellant waived his due process rights.

Appellant's second assignment of error is overruled.

Assignment of Error No. 1

"The trial court abused its discretion in finding appellant in contempt of court."

Louis Sancho argues that the trial court's finding that he was in contempt of court constituted an abuse of discretion, as it was unreasonable and arbitrary. Mr. Sancho argues that he was unaware of the court order requiring him to pay one-half of the children's uninsured medical expenses. Thus, his attempted discharge of the medical expenses in bankruptcy was not an act in contempt of the court's order. For the reasons that follow, we find that the trial court abused its discretion in finding Louis Sancho in contempt of court.

The abuse of discretion standard is applicable to appellate review of matters concerning child support. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030–1031. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

"Civil contempt is defined as that which exists in failing to do something ordered to be done by the court in a civil action for the benefit of the opposing party therein." *Beach v. Beach* (1955), 99 Ohio App. 428, 431, 59 O.O. 187, 189, 134 N.E.2d 162, 165; *Pedone v. Pedone* (1983), 11 Ohio App.3d 164, 11 OBR 247, 463 N.E.2d 656, paragraph one of the syllabus. "Proof of purposeful, willing or intentional violation of a court order is not a prerequisite to a finding of [civil] contempt." *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 15 OBR 285, 472 N.E.2d 1085, paragraph one of the syllabus. "It is irrelevant that the transgressing party does not intend to violate the court order. If the dictates of the judicial decree are not followed, a contempt citation will result." *Pedone*, 11 Ohio App.3d at 165, 11 OBR at 248, 463 N.E.2d at 658. To make a finding of civil contempt of court, the evidence must be clear and convincing. See *ConTex, Inc. v. Consol. Technologies, Inc.* (1988), 40 Ohio App.3d 94, 95, 531 N.E.2d 1353, 1355–1356. Thus, if the trial court had before it competent and credible evidence an appellate court cannot reverse the trial court's decision. *Id.* at 97, 531 N.E.2d at 1356–1357.

However, "[i]t is essential to the punishment of a person for contempt for the violation of a court order, that he have notice of the order, either actual or by

service of the same upon him." *McWhorter v. Curran* (1935), 57 Ohio App. 233, 245, 10 O.O. 419, 423, 13 N.E.2d 362, 367; see *Arthur Young & Co. v. Kelly* (1990), 68 Ohio App.3d 287, 295, 588 N.E.2d 233, 239 ("To show contempt, it is necessary to establish a valid court order, knowledge of the order, and a violation of it.").

After reviewing the record in the case *sub judice,* we find that it does not reflect that Louis Sancho ever received actual notice or notice by service of the court's order directing him to pay one-half of the children's uninsured medical expenses. Appellee's counsel contends that appellant's counsel prepared the order, and thus, knowledge should be imputed to Louis Sancho. Yet there is nothing in the record indicating that Mr. Sancho's counsel prepared the order. The certificate of service for the order does not include Mr. Sancho, his counsel, Merry Munk, or her counsel. With no evidence that Louis had knowledge of the existence of the order we cannot find that there was competent, credible evidence before the trial court justifying its finding of contempt. Thus, the trial court abused its discretion.

We, therefore, find appellant's first assignment of error to be well taken. Having found that appellant was not in contempt of court, we need not address appellant's third and fourth assignments of error.[5]

Assignment of Error No. 5

"The trial court abused its discretion in finding a change of circumstances sufficient to support a modification of the child support order."

The trial court ordered an increase in Louis Sancho's child support obligation on the basis that there was a change in circumstances justifying the modification. The alleged change in circumstance was Merry's remarriage to another man, having a child with him, and quitting her job to care for and raise the child. Merry began watching other children throughout the day to earn income, but at a rate less than what she earned in her prior employment. There was no evidence that Merry's child required any extraordinary care or treatment requiring her to be absent from work for an extended basis or permanently. There was no

---

5. Appellant's third assignment of error stated: "The trial court erred as a matter of law by its failure to provide the appellant the opportunity to present closing argument by summarily rendering judgment finding the appellant in contempt, thereby denying the appellant the right to effective assistance of counsel and due process of law."

Appellant's fourth assignment of error stated: "The trial court abused its discretion in ordering appellant to pay appellee's attorney's fees in order to purge himself of contempt in the absence of evidence of the defendant's ability to pay the same or competent evidence of record."

In light of our holding that the evidence did not support the finding of contempt of court, appellant no longer must purge himself of contempt, and the issue of attorney fees is moot. Mr. Sancho is not responsible for Merry Munk's attorney fees for the contempt proceedings.

evidence that Merry lost her job due to a layoff or termination. Rather, it is uncontested that Merry's alleged change in circumstances arose due to her voluntary change in employment.

"Where modification of an existing child support order is requested, the threshold determination is whether or not the order *can* be modified, and that requires a finding of a change in circumstances. Only if this necessary prerequisite has been satisfied may the trial court move on to a consideration of whether or not the order *should* be modified. This consideration requires a re-examination of the propriety of continuing the existing order in view of the changed circumstances." [6] (Emphasis *sic.*) *Bright v. Collins* (1982), 2 Ohio App.3d 421, 423, 2 OBR 514, 517, 442 N.E.2d 822, 826–827. The trial court's determination on either of these steps will not be reversed on appeal unless the court abused its discretion. See *Booth,* 44 Ohio St.3d at 144, 541 N.E.2d at 1030–1031.

After reviewing the trial court's determination to modify the parties' child support obligations, we hold that the trial court abused its discretion in finding that Louis Sancho's child support obligation warranted a modification.

In his judgment entry in the case *sub judice* the trial court judge found that pursuant "to the Ohio Child Support Guidelines and allowing an abatement in support to the Father for the six weeks of summer visitation," Mr. Sancho's support obligation should change from $191.76 per week including poundage to $195.38 per week including poundage. The apparent change in Louis's support obligation is a result in Merry's admitted voluntary decrease in income from $18,000 per year to $215 per week ($11,180 gross per year).

Assuming *arguendo* that there existed a sufficient change in the parties' support obligation to warrant the change, it was an abuse of discretion for the trial court to find that the support obligation *should* be modified, the second step in the two-part test.

It has long been the law in Ohio that "changes in the circumstances of the parties that may be considered must be material and not purposely brought about by the complaining party, and must be considered on the basis that the judgment sought to be modified was justified and proper when made." *Nash v. Nash* (1945), 77 Ohio App. 155, 32 O.O. 409, 65 N.E.2d 728, paragraph two of the syllabus. It is well established that the voluntary termination of employment or voluntary underemployment does not equate to a decrease in the ability to

---

6. In essence, the determination of whether the support obligation should be modified "involves a fresh look at the circumstances of the parents and of the child as the trial court finds them at the time of the modification hearing, in the context of the language of R.C. 3109.05(A) which applies to modification of child support orders as well as to the entry of original orders * * *." *Bright,* 2 Ohio App.3d at 423–424, 2 OBR at 517, 442 N.E.2d at 827.

support one's children.  *Boltz v. Boltz* (1986), 31 Ohio App.3d 214, 31 OBR 484, 509 N.E.2d 1274, syllabus; *Haynie v. Haynie* (1984), 19 Ohio App.3d 288, 19 OBR 459, 484 N.E.2d 750, syllabus; *Bellamy v. Bellamy* (Nov. 10, 1981), Morrow App. No. 583, unreported, 1981 WL 6484.

The evidence is undisputed in the present case that Merry voluntarily chose to stay home and raise her child.  There was no evidence presented showing that the decision was not entirely voluntarily.  Merry had the option to stay at home with her child, an option many people would cherish.  At the same time, however, it is not proper to force Louis Sancho, her ex-husband, to bear the greater burden of support for the children he and Merry are both equally responsible for. There should be no doubt that if Mr. Sancho chose to quit his job or voluntarily become underemployed, his obligation to support his children would not decrease. The court would not hesitate to impute income to him, and rightfully so, despite his lowered income basis.  It is equally proper to do the same for Merry.  For the above stated reasons, appellant's fifth assignment of error is well taken.

We, therefore, reverse the trial court's judgment regarding the finding of contempt, the award of attorney fees, and the modification of child support.  It is hereby ordered that this case be remanded to the trial court with instructions to evaluate the parties' respective child support obligations consistent with this opinion.

> *Judgment affirmed in part,*
> *reversed in part*
> *and cause remanded.*

EVANS and SHAW, JJ., concur.