OPINION
{¶ 1} Plaintiff-appellant Jefferson County Child Support Enforcement Agency (CSEA) appeals the decision of the Jefferson County Juvenile Court, which adopted the magistrate's decision finding that defendant-appellee Terry J. Johnston, Sr. need not pay any child support because he quit his job in order to care for his ill live-in girlfriend. We must determine whether the trial court abused its discretion in failing to order the father to pay child support to the children's custodian and whether the court erred in failing to mention health care costs. For the following reasons, we hold that Mr. Johnston is voluntarily unemployed and thus the trial court should have imputed income to him and ordered him to pay some amount of child support. Additionally, the trial court should have addressed the issue of health care. This case is reversed and remanded.
 STATEMENT OF FACTS {¶ 2} On April 3, 2003, CSEA filed a complaint for support and medical coverage against appellee Mr. Johnston and Edna Ice, the biological parents of two minor children (dobs November 1985 and July 1989) who were being cared for by Thurman Dillon. Apparently, Mr. Dillon's mother had custody of the children after a prior dependency action; however, Mr. Dillon's mother died, leaving him to care for the children.
 {¶ 3} A child support worksheet was attached to the complaint. This worksheet stated that Mr. Johnston's income was $20,045 plus $2,915 from investments for a total of $22,960 per year. CSEA asked that he be required to pay $518.83 per month in child support to Mr. Dillon. The worksheet also stated that Ms. Ice's income was $6,864 but that after an exemption for her other children, her income was only $764 per year for purposes of child support. Although this calculation would leave Ms. Ice liable to pay only $207 per year in child support, CSEA asked for an upwards deviation to a minimum order of $50 per month.
 {¶ 4} A hearing was held before the magistrate on July 18, 2003. Mr. Johnston advised that the income figures in the worksheet were correct but that he quit his job at Walden Industries (prior to the filing of the motion for support) in order to care for his live-in girlfriend. He disclosed that he asked his employer for a leave of absence but they refused. (Tr. 5). He stated that his girlfriend collected Social Security, was on oxygen, and suffers from diabetes and congestive heart failure. (Tr. 5, 6). When asked if her condition was terminal, he responded that they were not sure. He said that Hospice previously helped his girlfriend, and he was unsure if the benefit was still available. (Tr. 7).
 {¶ 5} On August 20, 2003, the magistrate released a decision ordering Ms. Ice to pay $50 per month in child support. The magistrate then stated that it was using its discretion to issue a no child support order against Mr. Johnston since he terminated his employment in order to care for his live-in girlfriend. CSEA filed timely objections arguing that the magistrate erred in failing to award child support and in failing to address who was responsible for the children's health care.
 {¶ 6} On September 29, 2003, the trial court overruled the objections and approved the magistrate's decision. The court ordered Ms. Ice to pay $50 per month in child support. The court noted that Mr. Johnston testified that he terminated his employment so he could be a caregiver to his girlfriend who is in poor medical condition. The court agreed with the magistrate that no child support would be ordered against Mr. Johnston, citing R.C. 3119.06. The court opined CSEA "has no compassion for or understanding of human needs and suffering and fails to recognize that justice must be tempered with compassion and common sense." CSEA filed timely notice of appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 7} CSEA's first assignment of error alleges:
 {¶ 8} "The trial court erred in failing to establish an order of child support against appellee Terry J. Johnston, Sr."
 {¶ 9} CSEA sets forth subassignments under this assignment of error, which we shall address in reverse order. The second subassignment of error states that "[t]he trial court erred in failing to impute income to Appellee Terry J. Johnston, Sr., and establish a guideline support obligation as the Appellee is voluntarily unemployed and has potential income."
 {¶ 10} CSEA notes that all income must be included in a worksheet and that such income includes potential income if a parent is not fully employed. R.C. 3119.01 (C)(5)(b). When the court determines the parent is voluntarily unemployed or voluntarily underemployed, then potential income means imputed income that the parent would have earned if fully employed and imputed income from any nonincome-producing assets of a parent. R.C. 3119.01(C)(11)(a) and (b). The imputed income that the parent would have earned if fully employed is determined from the following criteria: (i) prior employment experience; (ii) education; (iii) physical and mental disabilities; (iv) availability of employment in the geographic area; (v) prevailing wage and salary levels in the geographic area; (vi) special skills and training; (vii) ability to earn the imputed income; (viii) age and special needs of the child; (ix) increased earning capacity because of experience; and (x) any other relevant factor. R.C. 3119.01(C)(11)(a).
 {¶ 11} The issue of imputed income is not reached unless the court finds that the parent is voluntarily unemployed or underemployed. Here, the court essentially found that Mr. Johnston was not voluntarily unemployed or underemployed.
 {¶ 12} CSEA notes that Mr. Johnston conceded that he quit his job. CSEA urges that it is irrelevant that he quit before the action was filed and that he quit in order to care for his sick girlfriend. CSEA points out that the parent's subjective motivation for his unemployment can play no part in the court's decision. CSEA cites two cases where the court found that a mother's decision to stay home with other (non-handicapped) children does not relieve her from having income imputed to her as the father would be unjustifiably forced to bear the entire burden for the parties' child. Smith v. Smith (1998),130 Ohio App.3d 648; Sancho v. Sancho (1996), 114 Ohio App.3d 636.
 {¶ 13} The question of whether a parent is voluntarily or intentionally unemployed or underemployed is a question of fact for the trial court. Rock v. Cabral (1993), 67 Ohio St.3d 108,112. Absent an abuse of discretion, that factual determination will not be disturbed on appeal. Id. However, "[t]he parent's subjective motivations for being voluntarily unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation." Id. at 111 (finding voluntary underemployment where the parent had accounting degree but chose to be a weaver, even though she chose this profession prior to any support order).
 {¶ 14} We have added that the parent must have an objectively reasonable basis for unemployment or underemployment; reasonable with regards to the effects of the decision on the children's interests. Tuckosh v. Tuckosh (Mar. 15, 2002), 7th Dist. No. 00526CA, *8. Thus, the parent can voluntarily choose a job making less money or quit if that decision will eventually enable the parent to better provide for the child that is the subject of the order. See Woloch v. Foster (1994), 98 Ohio App.3d 806, 811.
 {¶ 15} Here, Mr. Johnston intentionally chose to quit his job. The Supreme Court has pronounced that his subjective motivation of wishing to stay home with his girlfriend is irrelevant because the main intent of Ohio's child support statute is to benefit the child, not the parent. By quitting, Mr. Johnston did not sacrifice his current income for his future career advancement or income or for his children's protection. Rather, he wished to care for his girlfriend, whom we note had her own Social Security income and owned her own home and to whom Mr. Johnston had no legal obligation to oversee. See R.C.3119.23(O) (allowing deviation if the parent is responsible for the support of others). Although his choice may legitimately be considered compassionate, the support of his children can not be sacrificed for such subjective motivation. The key here is hisability to currently obtain employment and support his children, not his current lack of employment based upon his desire to stay home with his ailing girlfriend.
 {¶ 16} The trial court abused its discretion when it failed to find that Mr. Johnston was voluntarily unemployed. If by established case law, a mother cannot avoid child support by deciding to stay home to take of her new baby, then this father should not be permitted to avoid child support by choosing to stay home to take care of his girlfriend. Theoretically, he can remain in his caregiver position, but practically, he cannot avoid his child support obligation/arrearage. As such, this case is reversed and remanded for determination of imputed income using the factors in R.C. 3119.01(C) (11)(a). We note that the trial court is not required to impute the amount Mr. Johnston was previously making, if there is no indication that he can reasonably obtain this type of job again, since he quit that job prior to this support action.
 {¶ 17} CSEA sets forth an alternative argument that the trial court should have at least set forth a minimum support order of $50 per month, noting that the court ordered the mother to pay a minimum support order even though her income was only $6,864 minus $6,100 in exemptions for other children for a total of $764 per year; in fact, the court increased her support obligation from $207 per year to the minimum amount of $50 per month. Because we are reversing and remanding on the prior subassignment and holding that Mr. Johnston is voluntarily unemployed and thus income must be imputed, this subassignment need not be addressed.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 18} CSEA's second assignment of error contends:
 {¶ 19} "The trial court erred in failing to address the issue of medical support."
 {¶ 20} Pursuant to R.C. 3119.30, the court shall determine the person responsible for health care. If health insurance coverage for the children is not available to either parent at a reasonable cost through a group policy, the court shall require that the obligor and the obligee share liability for the cost of the medical and health care needs of the children, under an equitable formula established by the court. R.C. 3119.30(C). The court shall also require the parties to immediately inform the court if health insurance coverage for the children becomes available at a reasonable cost. Id. See, also, R.C. 2151.231
(stating, "[t]he court, in accordance with sections 3119.29 to3119.56 of the Revised Code, shall include in each support order made under this section the requirement that one or both of the parents provide for the health care needs of the child to the satisfaction of the court).
 {¶ 21} According to the argument at the magistrate's hearing, CSEA merely desires the court to require the mother and Mr. Johnston to split any uninsured medical bills (remaining after Medicaid pays) and to inform the court if insurance becomes available in the future. CSEA's argument has merit. Thus, this order is also reversed and remanded for a judicial determination of how the parents will split the uninsured medical bills (if there are any under Medicaid) and to add a requirement that the parents inform the court if insurance becomes available.
 {¶ 22} For the foregoing reasons, the judgment of the trial court that Mr. Johnston is not voluntarily unemployed is hereby reversed and this case is remanded for a determination of imputed income, and the trial court's failure to mention health care is remanded for determination of how the parents will split any uninsured costs and for addition of language requiring court-notification if insurance becomes available to a parent.
Donofrio, J., concurs.
DeGenaro, J., concurs.