[Cite as *Fischer v. Fischer*, 2012-Ohio-2102.]

## IN THE COURT OF APPEALS OF CLARK COUNTY, OHIO

|  |  |  |
|---|---|---|
|  | : |  |
| CARRIE L. FISCHER | | |
| **Plaintiff-Appellant** | : | **C.A. CASE NO. 11 CA 81** |
| **vs.** | : | **T.C. CASE NO. 04-DR-0222** |
|  | : | **(Civil Appeal From** |
| **BRYAN T. FISCHER** | | **Common Pleas Court,** |
| **Defendant-Appellee** | : | **Domestic Relations Division)** |

. . . . . . . . .

## O P I N I O N

Rendered on the 11th day of May, 2012.

. . . . . . . . .

Wilfred L. Potter, Atty. Reg. No. 0029121, 234 North Limestone Street, Springfield, OH 45503
　　　Attorney for Plaintiff-Appellant

David Herier, Atty. Reg. No. 0068990, 451 Upper Valley Pike, Springfield, OH 45504
　　　Attorney for Defendant-Appellee

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Carrie Fischer appeals from a final order of the domestic relations court overruling her motion to find Bryan Fischer in contempt and sustaining Bryan's[1] motion to

---

[1] **For purposes of clarity and convenience, the parties**

reduce his monthly child support obligation.

{¶ 2}   Carrie and Bryan were married in 1994.   They have two children who were born in 1996 and 2000.   The marriage was terminated by a decree of divorce on August 10, 2004.   Pursuant to the decree, Carrie was designated as the residential parent and custodian of the two minor children.   Bryan was ordered to pay child support to Carrie in the monthly sum of $1,788.00, plus a processing fee.   At that time, Bryan's gross annual income was $106,588.71 and Carrie's was $30,145.70.

{¶ 3}   On June 6, 2007, Bryan filed a motion for modification of his child support obligation.   (Dkt. 39.)   On March 28, 2008, an Agreed Entry was filed that found a substantial change in circumstances had occurred since the decree and ordered a reduction of Bryan's child support obligation to $1,100.00 per month, plus processing fee, retroactive to the date Bryan's motion was filed, June 6, 2007.   Bryan's child support account   was credited with the difference between the reduced support of $1,100.00 per month and the greater amount of child support he had paid at the rate of $1,788.00 per month since the retroactive date, which was found to be an "overage" in his support obligation.   (Dkt. 60.)

{¶ 4}   In December of 2009, Bryan lost his job at Eagle Beverage Company when his position was eliminated after Heidelberg bought Eagle Beverage.   Bryan had the opportunity as a former employee of Eagle Beverage to interview for a job with Heidelberg, which he declined to do.   Bryan then began a new career as a self-employed photographer.   The corporation he established pays Bryan a salary of $24,000.00, and does not currently net any profits.

---

will be referred to by their first names.

{¶ 5} From December 21, 2009 until July 2, 2010, Bryan failed to pay the full amount of periodic support in the amount of $1,100.00 per month he had been ordered to pay. On March 15, 2010, Carrie filed a motion for an order finding Bryan in contempt for "intentionally not paying any monies toward his child support obligation." (Dkt. 67.) Bryan subsequently filed a motion for a reduction of his child support obligation. (Dkt. 75.)

{¶ 6} On January 25, 2011, the domestic relations court journalized an entry that identified the following two issues as remaining unresolved: the amount of Bryan's monthly child support obligation and Carrie's March 15, 2010 motion for contempt. A hearing on the two unresolved issues was held on February 18 and May 10, 2011 before a magistrate. On May 16, 2011, the magistrate filed a decision reducing Bryan's child support obligation to $422.44 per month, effective February 18, 2010. (Dkt. 87.) The child support worksheet completed by the magistrate showed a gross income of $24,933.33 for Bryan and $34,796.00 for Carrie. The magistrate overruled Carrie's motion for contempt on a finding that the records of the child support enforcement agency showed "that no arrears are owed[.]"

{¶ 7} Carrie filed objections to the magistrate's decision (Dkt. 88, 93), which the trial court overruled on September 28, 2011. (Dkt. 96). Carrie filed a timely notice of appeal.


FIRST ASSIGNMENT OF ERROR:

{¶ 8} "THE DECISIONS OF THE TRIAL COURTS WERE AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BY ITS DECISIONS NOT TO FIND THE DEFENDANT IN CONTEMPT FOR FAILING TO PAY

ANY CHILD SUPPORT FOR SIX MONTHS."

{¶ 9} A person who disobeys or resists "a lawful writ, process, order, rule, judgment, or command of a court or officer" may be punished for contempt. R.C. 2705.01(A). "Any party who has a legal claim to any support ordered for a child * * * may initiate a contempt action for failure to pay." R.C. 2705.031(B)(1). To make a finding of civil contempt, the evidence must be clear and convincing. *Sandro v. Sandro*, 114 Ohio App.3d 636, 683 N.E.2d 849 (3d Dist. 1996).

{¶ 10} The Ohio Supreme Court has defined contempt as "disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus. Therefore, in order for the domestic relations court to find Bryan in contempt, Carrie had the burden to present clear and convincing evidence that Bryan disobeyed or resisted an order of the court, and that the disobedience had the prohibited result.

{¶ 11} Carrie argues that the domestic relations court abused its discretion when it failed to find Bryan in contempt, because the record demonstrates that Bryan disobeyed the March 28, 2008 Agreed Entry by failing to pay child support in the amount of $1,100.00 per month the court had ordered from December 21, 2009 until July 2, 2010. The March 28, 2008 Agreed Entry Modifying Child Support and Spousal Support Orders provides, in pertinent part:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all payments of child support over the amount of two hundred fifty three dollars

and eighty four cents ($253.84) paid by Defendant, BRYAN TY FISCHER, weekly and received by Plaintiff, CARRIE L. FISCHER, for periods after June 6, 2007 shall be accounted for and applied as an <u>overage</u> from the date of the accounting and thereafter The Clark County Department of Job & Family Services fka Clark County Child Support Enforcement Agency <u>(CSEA) shall make appropriate adjustments to credit such overpayment so as to allow credit to be given therein allowing early termination of said obligation as appropriate</u>. (Emphasis added.)

**{¶ 12}** Carrie argues that the above paragraph required Bryan to maintain the overage in his child support account that was created when his child support obligation was modified, effective June 6, 2007, until the youngest of their two children is approximately 17½ years of age, when Bryan could cease payments and allow the overage to cover his remaining support obligation until the child is 18. The domestic relations court rejected Carrie's argument, finding (Dkt. 96, p. 7-8):

> The Magistrate correctly noted that the records of the CSEA indicate that there are no arrearages owed to Ms. Fischer and that there was no order requiring Mr. Fischer to maintain a credit balance in the child support account during the children's minority.

> At the hearing herein, Ms. Fischer contended that although Mr. Fischer owes no child support arrearages, he should have been found in contempt because he was ordered to maintain the credit balance that existed as a result of an overpayment of child support to her.

Upon conducting a de novo review of the record of this proceeding, this Court agrees with the Magistrate that there was not [sic] such order obligating Mr. Fischer to maintain a credit balance as a result of an overpayment made to Ms. Fischer and, to this end, the Court agrees with the Magistrate's findings relating to this issue.

{¶ 13} Carrie contends that the trial court's finding is against the manifest weight of the evidence and an abuse of discretion, because it is clear from the March 28, 2008 Agreed Entry that it was the intent of the parties that Bryan would continue making full monthly child support payments of $1,100.00, and the credit in his account would be maintained in order to allow his child support obligations to terminate prior to the youngest child reaching the age of majority.

{¶ 14} The provision of the March 28, 2008 Agreed Entry regarding the overage resulting from Bryan's continued payments of a greater amount of child support after the retroactive date of the ordered reduction imposed a burden on CSEA to credit Bryan's account with the amount of the overage and to apply the credit to allow an early termination of Bryan's child support obligation. The potential beneficiary of that provision is Bryan, not Carrie, who had the benefit of the overage Bryan had previously paid. The Agreed Entry does not prohibit Bryan from relying on the overage to pay a lesser amount of child support. The domestic relations court was entitled to construe its own order in that respect.

{¶ 15} In deciding an abuse of discretion claim, "[i]t is not enough that the reviewing court, were it deciding the issue de novo, would have not found (the trial court's) reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would

support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment, Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Rather, the reviewing court must find the trial court's decision was unreasonable, arbitrary, or unconscionable, and if "unreasonable" that "there is no sound reasoning process that would support the decision." *Id.* On that standard, we are unable to find that the domestic relations court abused its discretion when it declined to find, on the clear and convincing evidence standard, that Bryan had disobeyed a duty imposed on him by the March 28, 2008 order, notwithstanding the fact that Bryan's failure to pay authorized Carrie to file charges in contempt pursuant to R.C. 2705.031(B)(1).

{¶ 16} The first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR:

{¶ 17} "THE DECISION OF THE TRIAL COURT WAS ERROR AS A MATTER OF LAW BY REQUIRING MOTHER TO PROVE THERE WAS WORK AVAILABLE FOR FATHER."

THIRD ASSIGNMENT OF ERROR:

{¶ 18} "THE DECISION OF THE TRIAL COURT WAS AN ABUSE OF DISCRETION BY RULING THAT THE DEFENDANT WAS ENTITLED TO DOWNWARD MODIFICATION OF CHILD SUPPORT."

{¶ 19} We address these two assignments of error together because they were presented together by Carrie and are interrelated. "Whether a parent is voluntarily underemployed within the meaning of R.C. 3119.01 is a matter to be determined by the trial court based upon the facts and circumstances of each case,_ and its decision will not be

disturbed on appeal absent an abuse of discretion. *Combs v. Combs,* 12th Dist. Warren No. CA2001-11-102, 2003-Ohio-198, _ 6, citing *Rock v. Cabral*, 67 Ohio St.3d 108, 616 N.E.2d 218 (1993).

{¶ 20} In *AAAA Enterprises, Inc v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), the Supreme Court held:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.

{¶ 21} R.C. 3119.01 provides that "income," for purposes of calculating child support, consists of the sum of the gross income of the parent and any "potential income" of a parent who is underemployed. R.C. 3119.01(C)(11) defines "potential income" as including income that the court imputes to a parent. R.C. 3119.01(C)(11)(a) lists factors to consider in determining whether income should be imputed. In *Woloch v. Foster*, 98 Ohio App.3d 806, 811, 649 N.E.2d 918 (1994), we wrote:

The fact that the obligor's income has been reduced as a result of his or her voluntary choice does not necessarily demonstrate voluntary underemployment. The test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned.

{¶ 22} Carrie argues that the domestic relations court should have imputed additional income to Bryan due to his voluntary decision to not interview for a job at Heidelberg and to instead begin a career in a much lower paying field of photography. The record reflects that Bryan and other Eagle Beverage Company employees had an opportunity to interview for a job with Heidelberg. Bryan's job with Eagle Beverage was as a forecaster and working in information technology, in which he earned between $65,000 and $68,000 per year. Bryan declined to interview after learning that the new positions with Heidelberg would pay substantially less. The record does not indicate that Bryan's former position was available following Heidelberg's purchase of Eagle Beverage Company.

{¶ 23} The domestic relations court rejected Carrie's argument, finding, in part (Dkt. 96, p. 5-6):

This Court finds, from the totality of the credible evidence, that Mr. Fischer's change of employment was involuntary as a result of his company going out of business and being purchased by another company. The totality of the credible evidence also suggests that Mr. Fischer demonstrated an objectively reasonable basis for his diminished employment income, even

when determining the net affect of such a child support reduction upon the parties' children.

Mr. Fischer's loss of employment was not within his control and unfortunately this scenario took place at a time when the overall economy in this general area was at a near record low and such good paying jobs as the one that he had previously were (and still are) hard to find. The credible evidence suggest that Mr. Fischer, himself, played no part in his loss of employment and the only decision which he ultimately made was to attempt to find some form of employment in a very difficult economy, all of which justifies an equitable reduction of his child support obligation for the parties' children under the circumstances, despite Ms. Fischer's contentions to the contrary.

{¶ 24} A child support obligee who claims that the obligor is voluntarily underemployed has the burden of proof on that issue. *Moser v. Moser,* Warren App. No. CA2005-09-109, 2006-Ohio-5381. We agree with the domestic relations court that Carrie did not meet her burden of proof. Bryan testified that he does not have a college degree and does not have any special training that would assist him in getting a better job. Further, it is undisputed that Bryan was involuntarily terminated from Eagle Beverage Company through no fault of his own. Further, there is insufficient evidence in the record to support a finding that Bryan turned down any employment with Heidelberg: at most, he had an opportunity to interview with Heidelberg, not a job. Also, the record is devoid of any evidence of other, suitable, available employment in the area where Bryan lives that would justify imputing additional income to him.

{¶ 25} The second and third assignments of error are overruled.

FOURTH ASSIGNMENT OF ERROR:

{¶ 26} "THE DECISION OF THE TRIAL COURTS WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BY USING THE ARBITRARY NUMBER GIVEN BY FATHER AS HIS INCOME FOR CALCULATING CHILD SUPPORT."

{¶ 27} Carrie argues that the domestic relations court abused its discretion when it credited Bryan with only $24,000 in earnings from his Sub chapter S Corporation. According to Carrie, "[t]here is ample evidence in this case that defendant, besides being voluntarily under employed, is diverting income from his S Corporation for other purposes and minimizing his own income for child support purposes." (Brief, p. 14.)

{¶ 28} R.C. 3119.05(A) states:

When a court computes the amount of child support required to be paid under a court child support order or a child support enforcement agency computes the amount of child support to be paid pursuant to an administrative child support order, all of the following apply:

(A) The parents' current and past income and personal earnings shall be verified by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns.

{¶ 29} At the evidentiary hearing, Bryan presented his tax return for 2010, which

showed income of approximately $18,700.00. He also presented copies of his current paystubs. Bryan then testified that his annual income could be estimated at $24,000 because the $18,700 in earnings from 2010 was only from March or April of 2010. Carrie failed to submit any evidence showing that Bryan had any income in excess of the money he testified to earning from his corporation.

{¶ 30} Carrie argues that the domestic relations court should have rejected Bryan's evidence regarding his current income. The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). In *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997), we observed:

Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

{¶ 31} Based on Bryan's testimony and the supporting tax return documentation, there is competent, credible evidence supporting the amount of income the court credited to Bryan. Therefore, we cannot find that the court's decision to credit Bryan with $24,933.33 of annual income is against the manifest weight of the evidence or an abuse of discretion.

{¶ 32} The fourth assignment of error is overruled. Having overruled all of the

assignments of error, we will affirm the judgment of the domestic relations court.


DONOVAN, J., And HALL, J., concur.


Copies mailed to:

Wilfred L. Potter, Esq.
David Herier, Esq.
Hon. Thomas J. Capper