OPINION
{¶ 1} Pearlie Byrd is appealing the judgment of the Montgomery County Common Pleas Court, which found her in contempt and gave her an opportunity to purge the contempt charge.
 {¶ 2} On June 13, 2001, Nick Baird, the Director of the Ohio Department of Health (hereinafter "ODH") filed a complaint against Byrd seeking to enjoin Byrd from operating an unlicensed adult care facility. On July 20, 2001, the trial court found that Byrd was operating an adult care facility without a license and issued an injunction. The injunction prohibited Byrd from barring ODH surveyors access to the facility or otherwise interfering with the survey process, prohibited her from operating an adult care facility without a license, required her to remove from the facility all residents except for two that require personal care services, and issued a suspended fine of $1,000 and a 30-day jail term conditioned on compliance.
 {¶ 3} Teresa Lynn Halsey, a registered nurse and ODH surveyor, went with another ODH surveyor to the Byrd facility immediately after the court issued the injunction. Halsey testified at the show cause hearing to the following events on that day:
 {¶ 4} "Q. What happened when you went to the facility? In detail please.
 {¶ 5} "A. During the course of this, some of the questions were being answered or not being answered by either Ms. Byrd or her daughter. All of a sudden her daughter jumped up from a long table in the dining room, and jumped up and started yelling at us. At the same time with her palms wide open —
 {¶ 6} "[Objection raised and overruled.]
 {¶ 7} "A. With her palms stretched out, she starts slapping the table. At the same time, she was coming towards us yelling and screaming at the top of her voice, `Let's get it on.' Myself and the other surveyor looked at each other and immediately stood up, backed up, and exited the facility." (Tr. 19-20).
 {¶ 8} Halsey and another ODH surveyor additionally visited the facility on August 26, 2002, in response to a complaint. The facility remained unlicensed and on this date, Byrd's son, Eddie Byrd, met the ODH surveyors at the door and refused to let them in the facility. He informed the surveyors that they should contact Byrd's attorney and make an appointment to examine the facility. The surveyors then called the police and upon their arrival, the surveyors were permitted access to the facility.
 {¶ 9} During this visit, the residents were interviewed to determine if personal care services or supervision was being provided to them. The surveyors learned that the residents needed the following described assistance. Resident 1 needed assistance to get in and out of the bathtub.[1] Residents 2, 8, and 9 needed assistance with their medicines. Resident 3 needed assistance with his medication and needed to be reminded to shave, shower, and change clothes. Resident 5 was a dialysis patient, who needed a special diet with fluid restriction, to have his clothes washed, and to have his medication ordered. Resident 6 was an insulin dependent diabetic, who needed assistance with his medications, required a special diet, and needed supervision of his finances. Finally, Resident 7 needed assistance with his medications, including ordering the medications, and needed someone to wash his clothes. Further, Byrd's facility handled seven residents' money and all of the residents' medications were kept locked in the kitchen. Moreover, all of the patients received mental health services from Daymont West, a mental Health agency.
 {¶ 10} On November 1, 2002, the trial court determined that Byrd was again operating an unlicensed adult care facility. On January 31, 2003, an evidentiary hearing was held on a motion to show cause filed by Director Baird against Byrd. On February 11, 2003, Byrd was found in contempt of the trial court's June 13, 2001 order and provided an opportunity for Byrd to purge the contempt.
 {¶ 11} Byrd has filed this appeal of the trial court's contempt order, raising the following assignments of error:
 {¶ 12} "I. The trial court erred in finding defendant in contempt of court.
 {¶ 13} "II. The trial court's purge requirements are unreasonable, impossible of performance, and constitute an abuse of discretion."
Appellant's first assignment of error:
 {¶ 14} Byrd argues that she was not in contempt of the court's order as it was other employees, not herself, that denied the surveyors access to the facility and that she was not running an adult care facility but rather only a boarding house. We disagree.
 {¶ 15} Byrd initially alleges that the trial court found her guilty of criminal contempt of court. Civil contempt is characterized by a conditional sentence or fine that can be avoided by compliance. State v.Kitchen (1998), 128 Ohio App.3d 335, 341. Byrd was held in contempt and provided with a means to purge the contempt order. Thus, Byrd was found guilty of civil rather than criminal contempt.
 {¶ 16} A finding of civil contempt requires clear and convincing evidence of non-compliance with the court's order. Moraine v. StegerMotors, Inc. (1996), 111 Ohio App.3d 265, 268; Sancho v. Sancho (1996),114 Ohio App.3d 636, 642. A trial court's judgment in a contempt proceeding will not be reversed absent an abuse of discretion. State exrel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11; Szymczak v.Szymczak (2000), 136 Ohio App.3d 706, 713. An abuse of discretion amounts to more than a mere error of law or judgment but connotes an attitude on behalf of the court that is arbitrary, unreasonable, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. If competent, credible evidence exists to support the trial court's judgment, the court's judgment will not be reversed. Sancho, supra.
 {¶ 17} An adult care facility ("ACF") is defined as a facility that provides accommodations and supervision to three to sixteen unrelated adults and personal care services must be provided to at least three of the residents. R.C. 3722.01(A)(9). No one may operate an ACF without a license. R.C. 3722.16(A)(1). Personal care services amounts to assisting residents with the activities of daily living, such as bathing, dressing, grooming, helping to walk; assisting someone with self administration of medication; and preparing special diets under the directions of the licensed physician or licensed dietitian. (Tr. 12-13, 38; R.C. 3722.01(A)(6); O.A.C. 3701-20-01(B) and (T).) Further, the facility need not provide more than one of these listed services to be considered to be providing personal care services. O.A.C. 3701-20-01
(T). Supervision is defined as observing individuals going about their daily activities of living, assuring that they are engaging in safe health or welfare. Examples of such supervision are reminding someone to bathe, to dress, or to take care of their personal hygiene, assisting them in making appointments, or handling their money for them. (Tr. 13, 64; O.A.C. 3701-20-01(X).)
 {¶ 18} The trial court's July 20, 2001 injunction order provided:
 {¶ 19} "1. Defendant, Pearlie Byrd, is hereby enjoined from barring Ohio Department of Health Surveyors access to inspect her facility * * * or otherwise interfering with the ODH survey/inspection process.
 {¶ 20} "2. Defendant is hereby permanently enjoined from operating in any manner, personally or through agents, servants, representatives, employees, successors, and assigns, an adult care facility * * * without first obtaining a license.
 {¶ 21} "3. Defendant shall, within thirty (30) days of this Order, remove all residents in excess of two that require personal care services * * *". (Trial court 7/20/2001 order.)
 {¶ 22} The trial court found that Byrd violated this injunction by continuing to operate an adult care facility and by failing to remove all but two of the residents that require personal services. The testimony of the ODH surveyors established that on August 26, 2002, when they inspected Byrd's facility that more than three residents were receiving personal care services from the facility. ODH surveyor Halsey testified that Residents 2, 3, 7 and 9 were receiving assistance with taking their medications from the facility staff. (Tr. 24, 25, 31-32, 33). According to O.A.C. 3701-20-01, assisting residents with self-administration of medication is providing a personal care service. As such, Byrd was operating an ACF because she was running a facility that was housing more than two residents that required personal care services. This evidence without more amounts to competent credible evidence that Byrd was continuing to operate an adult care facility without a license despite the trial court's July 20, 2001 order prohibiting this action. Additionally, Byrd clearly had more than two residents that required personal care services, which also made her in violation of the trial court's July 2001 order. Therefore, we cannot say that the trial court erred in finding Byrd in contempt of court for violating the trial court's July 2001 order. Byrd's first assignment of error is without merit and is overruled.
Appellant's second assignment of error:
 {¶ 23} Byrd argues that the trial court erred in setting the requirements for her to purge her contempt conviction because they are unreasonable, impossible to perform, and amount to an abuse of discretion. We disagree.
 {¶ 24} "Judicial sanctions for civil contempt may be employed to coerce a defendant into compliance with a court order. Cincinnati v.Cincinnati Dist. Council 51 (1973), 35 Ohio St.2d 197, 206, 64 O.O.2d 129, 134-135, 299 N.E.2d 686, 693-694. Such sanctions will not be reversed unless there has been an abuse of discretion. State ex rel.Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11, 19 O.O.3d 191, 191-192,417 N.E.2d 1249, 1249-1250.
 {¶ 25} "However, a sanction for civil contempt must allow the contemnor the opportunity to purge himself or herself of contempt. In rePurola (1991), 73 Ohio App.3d 306, 312, 596 N.E.2d 1140, 1144; Fry v.Fry (1989), 64 Ohio App.3d 519, 523, 582 N.E.2d 11, 13-14; Tucker v.Tucker (1983), 10 Ohio App.3d 251, 252, 10 OBR 364, 365-366,461 N.E.2d 1337, 1339. The trial court abuses its discretion in ordering purge conditions that are unreasonable or where compliance is impossible. See In re Purola, supra, 73 Ohio App.3d at 313, 596 N.E.2d at 1144-1145;Courtney v. Courtney (1984), 16 Ohio App.3d 329, 334, 16 OBR 377, 382-383, 475 N.E.2d 1284, 1290-1291." Burchett v. Miller (1997),123 Ohio App.3d 550, 552.
 {¶ 26} The trial court's order finding Byrd in contempt provided that Byrd could purge the contempt by submitting a report under oath that indicates:
 {¶ 27} "1.) The names of all people that resided at Defendant's facility on January 31, 2003.
 {¶ 28} "2.) For each person who was a resident at Defendant's facility on January 31, 2003, provide the Court with the address where that person was relocated.
 {¶ 29} "3.) For each person remaining at the facility, provide the Court with an assessment of that person indicating the person's diagnosis and whether personal care services [as defined in 3722.01(A)(6)], supervision and/or assistance with medication is required." (Trial court's 2/11/03 order.)
 {¶ 30} Byrd argues that these purge requirements are unreasonable because they are not relevant to purging contempt, enjoin future conduct, and violate the privacy interests of the residents at Byrd's facility. We disagree. Byrd had a pattern of disregarding the licensing requirement and the trial court's orders. The trial court had previously told her to cease operating an ACF without a license and to have no more than two residents who require personal care services. However, Byrd continued to have at least eight residents that required personal care services and as such was operating an ACF without a license. (Tr. 24-27, 30-35). The trial court needed evidence that all but two of the residents that required personal care services had been relocated as was required by the court's order.
 {¶ 31} The trial court's order requested the names of the residents of Byrd's facility on the date of the hearing. This is not a burdensome task for Byrd to accomplish as she should have all of the names of the residents readily available. Additionally, in order to purge the contempt, the court ordered Byrd to provide the court an address where each of the residents listed in the above required list were relocated. This is neither impossible nor unreasonable. Byrd would need a new address for her relocated residents in order to forward mail or security deposits. Further, Byrd's residents would have needed assistance in relocating, making it unlikely that she would not have a new address for them. Finally, the trial court required an assessment of the residents remaining at Byrd's facility to determine if personal care services or supervision was required for the remaining residents. This assessment was necessary to determine if Byrd had complied with the trial court's order that she not have more than two residents that require personal care services and supervision. Although Byrd may not have any medical expertise, she is aware of the services she has to provide to the residents. Thus, Byrd would be able to state whether her remaining residents required personal care services and supervision.
 {¶ 32} The trial court's purge requirements were a reasonable means for the court to determine if Byrd had complied with the court's order. Additionally, in light of Byrd's history for disregarding the court's order, such purge requirements were necessary. Therefore, we do not find that the trial court erred in establishing the purge requirements for Byrd to avoid the contempt order. Byrd's second assignment of error is without merit and is overruled.
 {¶ 33} The judgment of the trial court is affirmed.
WOLFF, J. and BRYANT, J., concur.
(Hon. Thomas F. Bryant sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] To protect their anonymity, the residents were each assigned a number rather than being referred to by their name.