[Cite as *Bostick v. Bostick*, 2014-Ohio-736.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| MARJORIE E. BOSTICK | : | |
| | : | Appellate Case No. 2013-CA-32 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-DR-246 |
| v. | : | |
| | : | |
| CHARLES I. BOSTICK | : | (Civil Appeal from Common Pleas |
| | : | Court, Family Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of February, 2014.

. . . . . . . . . . .

JULIA L. LEVERIDGE, Atty. Reg. #0072440, Kemp, Schaeffer & Rowe Co., L.P.A., 88 West Mound Street, Columbus, Ohio 43215
    Attorney for Plaintiff-Appellee

DARRELL L. HECKMAN, Atty. Reg. #0002389, Harris, Meyer, Heckman & Denkewalter, LLC, 8 North limestone Street, Suite B, One Monument Square, Suite 200, Urbana, Ohio 43078
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.,

{¶ 1}     Charles Bostick appeals from the final judgment and divorce decree ending his marriage to Marjorie Bostick. He contends that the spousal-support award is excessive and that their tax debt should not be divided equally. Finding no error, we affirm.

## A. A trial court's decision

{¶ 2}    In October 2011, Marjorie filed for divorce. A final hearing was held over two days, in January and February 2013. Two primary issues were spousal support and the division of marital debt, including an accrued federal-tax debt of $152,850.50. On July 16, 2013, the trial court entered the final judgment and decree of divorce.

{¶ 3}    The court made the following findings. Charles and Marjorie were married for almost 21 years, during which time they had a comfortable, moderate standard of living. Charles and Marjorie both participated in the development and continuance of a business, which provided most of their income, installing floor lighting in movie theaters across the country. Charles did the labor, and Marjorie kept the books. Charles continues in the business, but Marjorie does not, both because of the divorce and because of her physical and mental conditions. While Charles is physically, emotionally, and mentally healthy, Marjorie has extensive health problems. The court found that Charles can earn from $150,000 to $200,000 per year in the business. And he receives $82 per month from premarital employment. Also, Charles has woodworking and electrical skills. Marjorie has no special skills. She has no retirement account and no source of income. The court found that she has no earning ability.

{¶ 4}    The trial court awarded Marjorie spousal support of $3,000 each month for 10 years. The court found that the tax debt had accrued on marital income, so it divided the debt between Charles and Marjorie equally.

## B. The spousal-support award

{¶ 5}    Charles's first assignment of error alleges that the spousal-support award is excessive.

{¶ 6}    The spousal-support statute, R.C. 3109.18, says that in making spousal-support

determinations a court must consider the factors in R.C. 3109.18(C)(1)(a)-(n), which include "[t]he relative earning abilities of the parties," factor (b), and "[a]ny other factor that the court expressly finds to be relevant and applicable," factor (n). Charles contends that the court's findings on his and Marjorie's earning abilities are erroneous. And he contends that the court should have considered Marjorie's financial misconduct.

{¶ 7}     A reviewing court gives great deference to a trial court's factual findings from the evidence. "The credibility of the witnesses and the weight to be given to their testimony are primarily matters for the trier of facts to resolve. 'The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.'" (Citation omitted.) *Rock v. Rock*, 2d Dist. Montgomery No. 25311, 2013-Ohio-390, ¶ 17, quoting *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

### 1.   Charles's earning ability

{¶ 8}     The trial court found that Charles "has the ability to earn between $150,000.00 and $200,000.00 per year" in the business. *Judgment Entry and Decree of Divorce*, 5 (July 16, 2013). Charles says that he has never had an annual income of over $74,000.

{¶ 9}   "[T]he term 'earning abilities' * * * refers not to actual earnings or employment, but rather to one's capacity to earn." (Citation omitted.) *Bingham v. Bingham*, 9 Ohio App.3d 191, 193, 459 N.E.2d 231 (10th Dist.1983). Charles presented 1099-MISC statements for 2009 (Exhibit E), 2010 (Exhibit D), and 2011 (Exhibit C), each of which lists Marjorie as the recipient. It appears from the testimony that the 2009 and 2010 1099s represent the business's total gross income for those years—$194,337.84 and $125,421.77, respectively. Because Charles and

Marjorie separated around October 2011, that year's 1099 represents gross income for only the first three quarters of the year—$135,334.66. The gross income for the last quarter of 2011 is given in Charles's 2011 federal tax return (Exhibit F), in which he claims the business had a gross income of $59,061. The business's total gross income in 2011, then, was $194,395.66. For 2012, Charles created a profit and loss statement (Exhibit G) that lists personal and business expenses of $143,043.56 and a net income of $13,082.17. While the statement does not give an amount for gross income, this amount must equal total expenses plus net income—$162,813.81. For 2013, Charles testified on the hearing's second day that the business had no earnings yet for the year.

{¶ 10}   The evidence in the record shows that between 2009 and 2012 the business had an annual gross income under $150,000 only once. In the other three years—including the two most recent years—its annual gross income was considerably more than $150,000. We think that the evidence supports the trial court's finding that the business has the present ability to earn from $150,000 to $200,000 each year.

## 2.   Marjorie's earning ability

{¶ 11}   The trial court found that Marjorie "does not appear to have any earning ability without [Charles]." *Judgment Entry and Decree of Divorce*, 5 (July 16, 2013). Charles contends that this finding is not based on the evidence.

{¶ 12}   Statutory spousal-support factor (c) requires a court to consider "[t]he ages and the physical, mental, and emotional conditions of the parties." R.C. 3109.18(C)(1)(c). Marjorie is 57 years old. The court found that she has extensive health problems. She testified that she has low bone density, making her susceptible to bone fractures. This condition has caused spinal

curvatures, she said, that in turn have caused slipped and bulging disks and bone spurs. She also said that the curvatures have resulted in a curving down on her lungs and could be causing heart problems. Marjorie testified that she has had a heart attack and has advanced pulmonary disease. She said that her carotid artery is partially blocked, slowing down blood flow to her brain. The trial judge saw evidence of Marjorie's health problems at the hearing, observing that "[u]pon testifying, Plaintiff was very emotional, shaky, was often confused, had difficulties in hearing and understanding, and appeared to have extreme difficulty in walking and standing." *Judgment Entry and Decree of Divorce*, 5 (July 16, 2013). The court also found that Marjorie "is on an extensive list of medications for her medical issues." (*Id*.).

{¶ 13}   The trial court found that Marjorie has no special skills. The evidence shows that, other than helping Charles in the business, Marjorie had little work experience during the parties' 21-year marriage. She attempted to start a candle making company, but it went nowhere. She owns an embroidery machine, but there is no evidence that she ever used it, or could use it, to earn a self-supporting wage. Marjorie also performed "door-to-door" real estate closings for a short period of time, but it is unclear how successful she was or how viable such a business would be in the future.

{¶ 14}   A vocational assessment report of Marjorie done in April 2012 by a vocational consultant says that she has some earning ability. The consultant did not believe Marjorie's claim that she could not work. He wrote that "[t]here was no evidence presented to this witness that demonstrated prohibition from her from doing at least sedentary work." *Vocational Assessment Report*, 3 (April 12, 2012). Rather, "[g]iven her long experience and success at working at the company that she and her husband started, this witness would suggest that she can do sedentary,

clerical work, either in the workplace or even perhaps from home." *Id*. at 4. According to the consultant, Marjorie's earning capacity in such work would be around $20,000 per year.

{¶ 15} The trial court was allowed to credit Marjorie's testimony over the vocational consultant's opinion. We note that the report was completed almost a year before the hearing, and Majorie's health could easily have deteriorated in that time to the point that she can no longer hold gainful employment. The trial court's finding that Marjorie has no earning ability finds support in the evidence.

### 3. Financial misconduct

{¶ 16} Charles contends that the trial court failed to take Marjorie's financial misconduct into account or even measure it. He contends that her giving large amounts of money to her family members over the years constitutes financial misconduct. Charles also contends that the federal-tax debt is her fault because she failed to file tax returns.

{¶ 17} Statutory spousal-support factor (n) requires a court to consider "[a]ny other factor that the court expressly finds to be relevant and equitable." R.C. 3105.18(C)(1)(n). This may include financial misconduct. *Kennedy v. Kennedy*, 7th Dist. Columbiana No. 2002 CO 09, 2003-Ohio-495, ¶ 38 ("Courts have held it is appropriate to consider a party's financial misconduct during the course of the marriage when making a spousal support determination."); s*ee also Taylor v. Taylor*, 2d Dist. Miami No. 2012-CA-16, 2013-Ohio-2341, ¶ 85 (A concern that a spouse would hide or destroy assets to keep the other spouse from having them may support an award of spousal support.).

{¶ 18} The marital-property statute, R.C. 3105.171, allows a court to compensate one spouse for the other spouse's financial misconduct with a distributive award or a larger share of

the marital assets. The statute gives a nonexclusive list of acts constituting such misconduct: "the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets." R.C. 3105.171(E)(4). Courts agree that "[a]n implicit element of financial misconduct is wrongdoing," *Hammond v. Brown*, 8th Dist. Cuyahoga No. 67268, 1995 WL 546903, *4 (September 14, 1995). "'"Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets."'" *Feldmiller v. Feldmiller*, 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 18, quoting *Mantle v. Sterry*, 10th Dist. Franklin No. 02AP-286, 2003-Ohio-6058, ¶ 32, quoting *Hammond* at *3. To find financial misconduct, there must be a clear showing of either. *Bucalo v. Bucalo*, 9th Dist. Medina No. 05CA0011-M, 2005-Ohio-6319, ¶ 25.

{¶ 19} Charles's spousal-support argument at the hearing was that Marjorie has already received "quite a bit of money" so he did not believe that he owed her anything more. (Tr. II. 60-61). He submitted, and testified about, lists that he compiled of Marjorie's purported spending from 2005 to 2011 (Exhibit B). One list shows what she spent during a visit to a casino ($1,652.29). Another list shows spending on what Charles deems frivolous items ($15,182.56). Other lists show bank withdrawals ($208,570.71) and spending on attorney fees ($7,000). Several lists contain amounts that Marjorie gave to or spent on members of her family—her parents ($71,250.56), her son Jason ($9,791.97), Jason's significant other ($14,708.23), her son Jamie ($1,481), her daughter Kathy and her husband ($29,560.22), and two of her granddaughters ($11,811.37).

{¶ 20} At the hearing, Charles conceded that he knew about some of the money given to family members. He said that some of the money given to Jason was given for work that he did

for them. Charles also said that Kathy had worked for him: "She was out of a job and she begged me for work so I let her go with me to work as much as I could." (Tr. II. 78). And he even "helped her with a down payment of a house after we [Charles and Marjorie] were separated." (*Id*. 79). Charles conceded that he and Marjorie practically raised the two granddaughters when they were young and "made sure that they [the girls] had whatever they needed to have no matter what." (*Id*. 77-78). Furthermore, Charles admitted that they also gave money to his family—to his mother to file for bankruptcy and to his son for the down payment on a car.

{¶ 21} The trial court here made no finding on the issue of financial misconduct and did not mention the issue in the final judgment. This is likely because Charles never referred to Marjorie's spending as "financial misconduct." Indeed, the word "misconduct" appears nowhere in the hearing transcripts or exhibits. Had the court considered the issue it would have found nothing about Marjorie's spending that suggests wrongdoing. Merely spending a lot of money does not alone constitute financial misconduct. *Callender v. Callender*, 7th Dist. Carroll No. 03-CA-790, 2004-Ohio-1382, ¶ 24 ("[W]hile appellant is obviously a spendthrift, this alone does not amount to financial misconduct."). There is no evidence that Marjorie ever personally gained. Nor is there any evidence that she was trying to defeat the distribution of marital property in the divorce action.

{¶ 22} Turning to the $152,850.50 federal-tax debt, according to a letter to the trial court from Charles and Marjorie's accountant (Exhibit H), the debt accrued in 1998, 2001, and 2002. There is no evidence that sheds any light on why the taxes were not paid in those years, or since. At the hearing, Charles accepted at least some blame for the debt. When he was asked how he wanted the trial court to divide the tax debt, Charles answered, "Most of the years I assumed they

were paid which is the bad thing to do. So I – It's just tough but I think 50/50 is the only way you can look at it." (Tr. II. 39-40).

{¶ 23}   The evidence does not support a finding of financial misconduct.

### 4.   Analysis

{¶ 24}   "Trial courts have broad discretion regarding spousal support orders. Accordingly, an appellate court ordinarily will not disturb those orders absent an abuse of discretion." (Citations omitted.) *Papp v. Papp,* 2d Dist. Montgomery No. 25333, 2013-Ohio-506, ¶ 15. "A trial court abuses its discretion when the court's attitude was unreasonable, arbitrary, or unconscionable." *Id.,* citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 25}   The trial court here methodically considered each of the spousal-support factors in R.C. 3109.18(C)(1). Although we have not explicitly addressed all of them, we have stated the court's findings on most of them. Factor (a), though, we must consider further. This factor concerns "[t]he income of the parties, from all sources * * *." The trial court found that Marjorie has no source of income. She testified that she looked into Social Security disability benefits, but due to a problem with her Social Security number, she was unable to apply. She said that once that problem is resolved she plans to apply. The court also found that Charles is continuing in the business, but it does not make a finding of his income. Above we discussed Charles's earning ability, the business's gross income, but this is not Charles's income. His income is the business's net income, that is, its gross income minus expenses. Net income is difficult to determine in this case because the evidence on the business's finances leaves much to be desired, which clearly frustrated the trial court at the hearing. At one point, the trial court calculated net

income to be $70,547. The court asked Charles if that number "sound[s] about right," and Charles replied, "Yeah, that sounds more common." (Tr. I. 88). Later, Charles agreed that his typical yearly income was around $74,000. (Tr. II. 43).

{¶ 26} Assuming a yearly income of $70,000 to $74,000, the spousal-support award equals roughly half of Charles's income. Courts have affirmed spousal-support awards that equal half of an obligor's income. *E.g.*, *Sollberger v. Sollberger*, 9th Dist. Summit No. C.A. 15796, 1993 WL 84546, *1 (Mar. 17, 1993); *Campitelli v. Campitelli*, 65 Ohio App.3d 307, 311, 583 N.E.2d 1322 (5th Dist.1989). In this case, in light of the findings and evidence, we cannot say that the spousal-support award is unreasonable. And we note that the trial court has retained jurisdiction to modify spousal support. So the award can be lowered if Marjorie receives social-security benefits or business is bad for Charles.

{¶ 27} The first assignment of error is overruled.

### C. The division of the tax debt

{¶ 28} The second assignment of error alleges that the trial court erred by failing to consider Marjorie's financial misconduct in its division of marital assets. Charles contends that the trial court failed to penalize Marjorie for her financial misconduct. He says that if spousal support is not reduced, her misconduct should be addressed in the distribution of marital assets and debts, as provided by R.C. 3105.171(E)(4), mentioned above. Charles contends that since Marjorie spent so much of their marital assets, she should have to pay the entire debt.

{¶ 29} That he should have to pay less than half of the tax debt was not Charles's contention at the hearing. As we pointed out above, he accepted at least partial responsibility for the tax debt and asked the court to divide the debt equally. And we concluded above that the

evidence does not support a finding of financial misconduct.

**{¶ 30}** The second assignment of error is overruled.

**{¶ 31}** The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and WELBAUM, J., concur.

Copies mailed to:

Julia L. Leveridge
Darrell L. Heckman
Hon. Lori L. Reisinger