[Cite as *Bostick v. Bostick*, 2016-Ohio-3354.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| MARJORIE E. BOSTICK | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2015-CA-13 |
| | : | |
| v. | : | Trial Court Case No. 11-DR-246 |
| | : | |
| CHARLES I. BOSTICK | : | (Civil Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of June, 2016.

. . . . . . . . . .

DAVID BEITZEL, Atty. Reg. No. 0018224, Beitzel Law Office, 22 North Short Street, Troy, Ohio 45373
        Attorney for Plaintiff-Appellee

DARRELL L. HECKMAN, Atty. Reg. No. 0002389, Harris, Meyer, Heckman & Denkewalter, LLC, One Monument Square, Suite 200, Urbana, Ohio 43078
        Attorneys for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Charles Bostick appeals decisions of the Champaign County Court of

Common Pleas, Domestic Relations Division, finding him in contempt for failure to pay spousal support, reducing his spousal-support obligation, overruling his motion for a new trial, and ordering him to serve a 30-day jail sentence if he fails to satisfy the court-imposed purge conditions. Finding no error, we affirm.

## I. Background

{¶ 2} The trial court entered a final judgment and decree of divorce on July 16, 2013, ending the parties' 21-year marriage. The divorce decree ordered Charles to pay his former wife, Marjorie, monthly spousal support of $3,000. Charles appealed, and on February 28, 2014, we affirmed. *Bostick v. Bostick*, 2d Dist. Champaign No. 2013-CA-32, 2014-Ohio-736.

{¶ 3} On October 30, 2013, Marjorie filed her first motion for contempt against Charles for non-payment of spousal support. A contempt hearing was held in February 2014. The trial court found Charles in contempt for failing to pay spousal support as ordered in the divorce decree. A second hearing was held in March at which the trial court sentenced Charles to 30 days in jail with the opportunity to purge the contempt finding by paying the spousal-support arrearage before a purge hearing. The purge hearing was held in July at which the trial court found that Charles had not satisfied the purge conditions and ordered him to serve a 30-day jail sentence. Charles appealed from the decision finding that he failed to purge the contempt and imposing the jail sentence. We affirmed on February 6, 2015. *Bostick v. Bostick*, 2d Dist. Champaign No. 2014-CA-22, 2015-Ohio-455. We had stayed the sentence while we considered Charles's appeal. On February 9, the trial court ordered Charles to begin serving the 30-day jail sentence immediately.

{¶ 4} Back in March 2014, Charles had filed a motion to reduce his support obligation. And in December 2014, Marjorie filed another motion for contempt against Charles for non-payment of spousal support. A hearing on both motions was held on January 21 and 22 and February 9, 2015. A major issue at the hearing was Charles's financial status in 2013 and 2014. Charles works for himself installing floor lighting in movie theaters around the country as a subcontractor for Progressive Flooring Services. In the July 2013 divorce decree, the trial court found that Charles could earn from $150,000 to $200,000 per year in the business. Charles claims that his income has fallen and that after paying his personal expenses, he was left in the red in both 2013 and 2014. In support of his claims, Charles presented his federal tax returns and spreadsheets prepared by Norma Duffey his bookkeeper, and girlfriend, detailing his business income and expenses and his personal expenses. Charles and Duffey also testified. Charles said that Progressive was the only contractor for whom he worked and that, for several reasons, it started giving him less work in 2013. He admitted that he has not sought work from other contractors.

{¶ 5} Marjorie presented the testimony of a forensic accountant, Heather Deskins, who had examined Charles's financial records. After adding back certain expenses, Deskins concluded that Charles's income for 2013 was $81,671[1] and for 2014 was $69,836. Marjorie herself testified that she was still unemployed, as she had been at the time of the original divorce decree. She said that her health had changed significantly and that she had been told by a neurosurgeon and a cardiologist that she cannot work.

---

[1] This amount—and all amounts in this opinion—is rounded to the nearest dollar.

{¶ 6} The trial court sustained Charles's motion on February 18, 2015, and reduced his spousal-support obligation to $1,500 retroactive to March 27, 2014. The court said that Charles's "exact income is difficult to determine, but considering either [Marjorie]'s or [Charles]'s calculations, it is at best one-half (1/2) of the July 16, 2013, determination." *Journal Entry*, 1 (Feb. 18, 2015). The court found his yearly income was between $60,000 and $70,000. The court also sustained Marjorie's second motion for contempt, again finding Charles in civil contempt for failing to pay court-ordered spousal support. The court found that since the divorce decree he had made only $11,000 in support payments. The court sentenced him to 30 days in jail, beginning on April 1, 2015, but suspended the sentence on the condition that Charles timely pay his current monthly spousal-support payments between then and April 1 and pay an additional $20,000 before April 1.

{¶ 7} On March 13, Charles filed a motion for a new trial under Civ.R. 59(A), arguing that he was unable to comply with the purge conditions. He asked the court to reduce his monthly support obligation to $400 plus a monthly amount toward the arrearage. The trial court overruled the motion on March 30. The court said that it had already considered all of the evidence cited in Charles's motion, so there was no basis for a new trial. The court also said that it had already reduced his spousal support obligation by 50% and had already ordered a monthly payment on the arrearage.

Charles appealed.

## II. Analysis

{¶ 8} Charles challenges the contempt finding, the purge conditions, and the

reduced spousal-support obligation.

## A. *The contempt finding*

**{¶ 9}** The first assignment of error alleges that the trial court erred by finding Charles in contempt of court, because Charles was unable to pay the ordered spousal support. "We review the trial court's decision whether to find a party in contempt under an abuse of discretion standard. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable." (Citations omitted.) *Hoagland v. Hoagland*, 2d Dist. Miami No. 2014-CA-30, 2015-Ohio-2426, ¶ 8.

**{¶ 10}** "Disobedience of, or resistance to, a lawful judgment of a court is conduct that may be punished as [and] for a contempt." *Wagshul v. Wagshul*, 2d Dist. Montgomery No. 23564, 2010-Ohio-3120, ¶ 35, citing R.C. 2705.02(A). " 'As a general rule, the inability of the contemnor to comply with a judgment or order, without fault on the contemnor's part, is a good defense in a contempt proceeding for disobedience of the order.' " *Id.*, quoting 17 Ohio Jurisprudence 3d, Contempt, Section 62. But " 'a person who seeks to satisfy the court that his or her failure to obey an order or judgment was entirely due to the person's inability to render obedience carries the burden of establishing that fact.' " *Id.*, quoting 17 Ohio Jurisprudence 3d, Contempt, Section 62.

**{¶ 11}** Charles had been ordered, in July 2013, to pay monthly support of $3,000. The trial court found that in the months since, Charles had paid $500 seven months, nothing three months, $1,000 two months, and $5,500 in January 2015 for a total of $11,000. So he had accumulated a sizeable arrearage. Charles does not dispute that he failed to obey the support order. Rather, he argues that he was unable to obey because he simply did not have the money. Charles claims that after his reasonable living

expenses were deducted from his income, nothing was left. This, he says, establishes the inability-to-comply defense, citing this Court's opinion in *Boddie v. Boddie*, 2d Dist. Montgomery No. CA 9637, 1986 WL 8525 (Aug. 1, 1986). In *Boddie*, this Court reversed a contempt order because the evidence was "uncontroverted" that the appellant did not have the ability to pay the alimony ordered by the trial court. *Boddie* at *1. "Cases are not always 'clear-cut' upon the distinction between whether inability to pay is voluntary or involuntary," this Court said. "The record before us, however, reveals no such difficulty on this point." *Id.* at *2. This Court also found that the inability to pay was not self imposed, because the appellant was forced to retire and was living on his retirement income. Given this fixed income and the appellant's expenses, this Court found that he was not able to make the court-ordered payments, noting that "opposing counsel failed to offer rebuttal evidence to the appellant's asserted financial status." *Id.*

{¶ 12} Unlike the evidence in *Boddie*, the evidence here is very much in dispute. Charles presented two spreadsheets that summarize his 2013 income. Exhibit Q lists gross receipts of $168,137 and expenses of $114,156, for a net profit of $53,981. Exhibit R lists personal expenses totaling $53,216. So according to these spreadsheets Charles was left with $765 in 2013. Schedule C of his 2013 federal tax return (Exhibit L) shows gross income of $170,467 and total business expenses of $130,478, for a net profit of $39,989. Charles also presented two spreadsheets summarizing his 2014 income. Exhibit A lists his 2014 business income and expenses. It shows gross receipts of $100,533 and expenses totaling $72,077—yielding a net income of $28,456. Exhibit B lists personal expenses totaling $34,413. According to these spreadsheets, then, Charles was short $5,958 in 2014. Schedule C of his 2014 federal tax return (Exhibit S) lists similar amounts

for gross receipts and expenses.

{¶ 13} The accuracy of these amounts is not the primary point of contention. The question is whether all of the expenses should be included for purposes of determining Charles's ability to pay support. Heather Deskins, Marjorie's forensic accountant, testified about Charles's 2013 and 2014 "economic income," which she defined as "the net income from the business, plus any personal or discretionary or noncash-type items." (Jan. 22, 2015 Tr. 106). Deskins explained the idea this way:

> Economic income is, in my opinion, being a business owner, you have certain privileges as to what expenses that you are allowed to deduct versus someone that is not self-employed. So if you are a W-2 employee, you just get your wages. Your employer doesn't provide you any added benefit. When you're self-employed you have the ability to be able to deduct those expenses off of your tax return.

> Therefore, there's an economic benefit to certain assets. So, for example, his truck, he's allowed to deduct that, but that's also something that he's getting a personal benefit from.

(*Id.* at 127-128).

> In my analysis * * * I'm adding those back as being personal and discretionary. Because he's the business owner, he has the discretion to deduct those expenses off of his tax return. If he was a W-2 employee he may not have that discretion. He would have to pay for his own vehicle, his own maintenance and repairs, his own insurance.

> So those are benefits that he's receiving that as a business owner

he is allowed to deduct. Therefore, I'm adding those back to him as personal and discretionary.

(Id. at 132-133).

{¶ 14} In calculating Charles's 2013 income, Deskins reviewed his Schedule C, starting with the net profit of $39,989. She then "made various adjustments that were either not in cash, which would be the depreciation, as well as some personal and discretionary expenses that were expensed through the tax return that [she] added back as income." (*Id.* at 101-102). Depreciation is listed as $19,157, and Deskins found personal and discretionary expenses totaling $22,525. These she added to net profit to get an economic income for 2013 of $81,671. For 2014, Deskins calculated only his income for the first four months—the months before he filed his motion to reduce support. In those months, she found gross receipts of $47,925, and she annualized this amount to $143,776. She then took the ratio of his 2013 economic income ($81,671) to gross receipts ($168,137) and multiplied this income-to-revenue percentage by the annualized gross receipts (48.5% x $143,776). This gives an economic income of a little over $69,000 in 2014. Charles's counsel pointed out that actual gross receipts and expenses for 2014 are available and asked the trial court to use them rather than Deskins's estimations. But the court pointed out that the evidence conflicted on what the actual amounts are. So said the court, it would have to determine for itself what the "real numbers" are.

{¶ 15} The trial court found that Charles's yearly income averaged between $60,000 and $70,000. "In contempt proceedings, great reliance should be placed upon the discretion of the judge both in his findings of contempt and in the penalty imposed." *Offenberg v. Offenberg*, 8th Dist. Cuyahoga No. 78885, 2003-Ohio-269, ¶ 77, citing *Arthur*

*Young & Co. v. Kelly*, 68 Ohio App.3d 287, 294, 588 N.E.2d 233 (10th Dist.1990). Using the lower number and accepting all of Charles's claimed personal expenses ($53,216 in 2013 and $34,414 in 2014) minus the support payments that he made in those years ($11,750), Charles would be left with at least $44,120. We cannot say that it was unreasonable of the trial court to find that Charles had the ability to comply with the spousal-support order.

{¶ 16} The first assignment of error is overruled.

B. *The purge conditions*

{¶ 17} The second assignment of error alleges that the trial court erred by finding that Charles had the ability to purge his contempt.

{¶ 18} " '[A] sanction for civil contempt must allow the contemnor the opportunity to purge himself or herself of contempt. The trial court abuses its discretion in ordering purge conditions that are unreasonable or where compliance is impossible.' " (Citations omitted.) *Baird v. Byrd*, 2d Dist. Montgomery No. 19808, 2003-Ohio-6252, ¶ 25, quoting *Burchett v. Miller*, 123 Ohio App.3d 550, 552, 704 N.E.2d 636 (6th Dist.1997). "The determination of whether a particular purge condition is unreasonable or impossible varies on a case-by-case basis and the contemnor must present sufficient evidence at the contempt hearing that the trial court's purge conditions are unreasonable or impossible for the contemnor to meet." (Citations omitted.) *Mackowiak v. Mackowiak*, 12th Dist. Fayette No. CA2010-04-009, 2011-Ohio-3013, ¶ 51.

{¶ 19} The purge conditions here are that Charles pay his current monthly spousal-support obligation between then and April 1, 2015, and make an additional payment of $20,000 before April 1. Charles argued, in his motion for a new trial, that he was unable

to comply with the purge conditions. Overruling the motion, the trial court said that it had already considered all of the evidence cited in the motion, so there was no basis for a new trial. The court also said that it had already reduced his spousal support obligation by 50% and had already ordered a monthly payment on the arrearage. Charles says that to satisfy these conditions he would have "to pay his entire net worth in forty (40) days and more than six (6) months income without regard for <u>any</u> living expenses." (Emphasis sic.) *Brief of Defendant-Appellant*, 11. Which he argues makes the conditions unreasonable.

**{¶ 20}** As we have already said, Charles's financial state was the subject of considerable dispute and it was not unreasonable for the trial court to find that he had the ability to pay what he owed. Based on our analysis above, we do not think that these purge conditions are unreasonable or impossible for Charles to meet. The conditions are directly related to his contempt and are directed toward compelling him to obey an order to satisfy the arrearage. *Compare Offenberg*, 2003-Ohio-269, at ¶ 78 (upholding purge condition to pay $15,269 in arrearages where the condition was directly related to the cross-appellant's contempt and was directed toward compelling him to obey the order to satisfy the arrearages).

**{¶ 21}** The second assignment of error is overruled.

### C. *The reduced spousal-support obligation*

**{¶ 22}** The third assignment of error alleges that the trial court erred by failing to adequately reduce Charles's spousal-support obligation. Charles argues that the support that the trial court ordered him to pay is unreasonable because he has no disposable income.

**{¶ 23}** "Regarding spousal support, we note that '[d]omestic relations courts are granted broad discretion concerning awards of spousal support, and their orders will not be disturbed on appeal absent an abuse of discretion.' " *Cummings v. Cummings*, 2d Dist. Montgomery No. 26594, 2015-Ohio-3686, ¶ 13, quoting *Perry v. Perry*, 2d Dist. Clark No. 07-CA-11, 2008-Ohio-1315, ¶ 5.

**{¶ 24}** Charles does not really offer any new argument to support this assignment of error. He simply relies on his earlier arguments that he has no money with which to pay any spousal support. Our response to those arguments is also our response here: based on the evidence, the trial court could reasonably have found that Charles can pay $1,500 each month in spousal support.

**{¶ 25}** The third assignment of error is overruled.

### III. Conclusion

**{¶ 26}** We have overruled each of the three assignments of error presented. The trial court's judgment therefore is affirmed.

. . . . . . . . . . . . .

WELBAUM, J., concurs.

FROELICH, J., concurring:

**{¶ 27}** The court's contempt order of February 18 allowed him to purge the contempt if he timely paid his current monthly support and an additional $20,000.00 by April 1. Based on the record, I would find the additional lump sum payment to be an unreasonable purge condition. Most of the evidence at the contempt hearing – upon which the court relied on denying Appellant's motion for a new trial - dealt with Appellant's

cash flow and not any ability to pay a large lump sum. Appellant alleged that he was unable to pay the lump sum and the court should have provided him with the opportunity to prove this inability.

{¶ 28} Regardless, I agree that the trial court did not err in reducing the spousal support as it did and in finding Appellant in contempt and imposing a purge condition that he pay his current support obligation and, therefore, concur in judgment.

. . . . . . . . . .

Copies mailed to:

David E. Beitzel
Darrell L. Heckman
Hon. Lori L. Reisinger